IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EWING CONSTRUCTION CO., INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| vs. | § | |
| | § | **2:10-cv-00256** |
| AMERISURE INSURANCE COMPANY, | § | |
| | § | |
| **Defendant.** | | |

**DEFENDANT AMERISURE INSURANCE COMPANY'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND
RESPONSE TO PLAINTIFF EWING CONSTRUCTION INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.    Summary: The Contractual Liability Exclusion And Other
      Business Risk Exclusions Preclude All Coverage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Factual Summary: Tuloso-Midway Sued Ewing Seeking "The
      Difference Between The Value Of The Tennis Courts ... As
      Contracted For And As Actually Delivered". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Statement Of The Issues: Amerisure Seeks A Declaration That It
      Owes No Duty To Defend Nor Indemnify Ewing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   The CGL Policy Is Not Designed To Function As A Performance
      Bond Or Guarantee The Quality Of Ewing's Construction Work. . . . . . . . . . . . . . . . . . . 4

V.    The Contractual Liability Exclusion Negates All Coverage. . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Exclusion Applies To General Breach Of Contract
            Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Economic Loss Cases Are Always Excluded From
            Coverage, As They Fail To Meet The Narrow Exception
            To The Exclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    Tuloso-Midway's Claims Against Ewing Sound Only In
            Contract, Triggering The Contractual Liability Exclusion. . . . . . . . . . . . . . . . 13

      D.    The Underlying Lawsuit Contains No Independent Tort Claims. . . . . . . . . . . . . 15

      E.    Ewing's Likely Arguments Fail To Mutate The Amerisure
            CGL Policies Into Performance Bonds Covering Ewing's
            Business Risks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            1.    As Recognized By The Supreme Court of Texas
                  And Fifth Circuit, The Economic Loss
                  Applies In The Duty To Defend Context. . . . . . . . . . . . . . . . . . . . . . . . 17

2.       The *Swinerton* Decision Does Not Support Ewing,
As It Was Incorrectly Decided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.     The Other Business Risk Exclusions Also Negate Coverage. . . . . . . . . . . . . . . . . . . . . . . 21

VII.    For The Same Reasons As It Owes No Duty To Defend,
Amerisure Also Owes No Duty To Indemnify Ewing. . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VIII.  As There Is No Coverage, Ewing's Insurance Code Claims Fail. . . . . . . . . . . . . . . . . . . 24

# INDEX OF AUTHORITIES

**Page**

*American Home Assur. Co. v. Tech, L.L.C.,*
    WL 2331395 (S.D. Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Botello v. Parkway Transport, Inc.*,
    1995 WL 540245, *3 (Tex.App.–San Antonio 1995, no pet.).. . . . . . . . . . . . . . . . . . . 20

*CBI NA-CON, Inc. v. UOP Inc.,*
    961 S.W.2d 336 (Tex.App.–Houston [1st Dist.] 1997 rev. denied). . . . . . . . . . . . . . . 14

*Centennial Insurance Co. v. Ryder Truck Rental,*
    149 F.3d 378 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Century Sur. Co. v. Hardscape Const. Specialties Inc.,*
    578 F.3d 262 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Commercial Standard Insurance Co. v. American General Insurance Co.,*
    455 S.W.2d 714 (Tex. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cone v. Fagadau Energy Corp.*,
    68 S.W.3d 147 (Tex.App.–Eastland 2001, rev. denied). . . . . . . . . . . . . . . . . . . . . . . 20

*David Lewis Builders, Inc. v. Mid-Continent Cas. Co.,*
    720 F. Supp. 2d 781 (N.D. Tex. 2010) WL 365279 (5th Cir. 2011). . . . . . . . . . . . . *passim*

*Farmers Texas Country Mut. Ins. Co. v. Griffin,*
    995 S.W.2d 81 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19, 23

*Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*,
    197 F.3d 720 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*,
    327 S.W.3d 118 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Grimes Constr., Inc. v. Great American Lloyds Ins. Co.*,
    188 S.W.3d 805 (Tex.App.–Fort Worth 2006),
    *reversed on other grounds*, 248 S.W.3d 171 (Tex. 2008). . . . . . . . . . . . . . . . . . . . . . 20

*Hansberger v. EMC Mort. Corp.*,
    2009 WL 2264996, **3-4 (Tex.App.–San Antonio 2009, rev. denied). . . . . . . . . . . . . 20

*Hartford Casualty Co. v. Cruse,*
    938 F.2d 601 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Heil Co. v. Polar Corp.*,
    191 S.W.3d 805 (Tex.App.–Fort Worth 2006, rev. denied). . . . . . . . . . . . . . . . . . . . . 20

*Highland Crusader Offshore Partners, L.P. v. Motient Corp.*,
    281 S.W.2d 237 (Tex.App.–Dallas 2009, rev. denied). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Houston Fire & Cas. Ins. Co. v. Riesel Indep. Sch. Dist.*,
    375 S.W.2d 323 (Tex.Civ.App.–Waco 1964, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . 14

*Jim Johnson Homes v. Mid-Continent Cas. Co.*,
    244 F.Supp2d 706 (N.D. Tex. 2003), *partially overruled on
    other grounds*, 242 S.W.3d 1 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jim Walter Homes, Inc. v. Reed,*
    703 S.W.2d 701 (Tex.App.–Corpus Christi 1985), *aff'd in part,
    rev'd in part sub nom*, 711 S.W.2d 617 (Tex. 1986). . . . . . . . . . . . . . . . . . . . 11, 12, 13, 14

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*,
    980 S.W.2d 462 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*King v. Dallas Fire Ins. Co.,*
    85 S.W.3d 185 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
    242 S.W.3d 1 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 18

*Mary Kay Holding Corp. v. Fed. Holding Co.,*
    2007 WL 4179313 (N.D. Tex. 2007), *aff'd sub nom.*,
    309 Fed. Appx. (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Progressive County Mut. Ins. Co. v. Boyd*,
    177 S.W.3d 919 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Pugh v. Gen. Terrazzo Supplies, Inc.*,
    243 S.W.3d 84 (Tex.App.–Houston [14th Dist.] 2007, no pet.). . . . . . . . . . . . . . . . . . . 14

*Schambacher v. R.E.I. Elec., Inc.*,
    2010 WL 3075703, *7 (Tex.App.–Fort Worth 2010, no pet.). . . . . . . . . . . . . . . . . . . . . 14

*Staton Holdings, Inc. v. Russell Athletic, Inc.*,
     2009 WL 4016117, \*\*3-4 (N.D. Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sw. Bell Tel. Co. v. DeLanney,*
     809 S.W.2d 493 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Swinerton Builders v. Zurich Am. Ins. Co.,*
     WL 4919073 (S.D. Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Tayssoun Transp., Inc. v. Universal Am-Can, Ltd.*,
     2005 WL 1185811, \*23 (S.D. Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,*
     784 S.W.2d 692 (Tex.App.–Houston [14th Dist.] 1989, writ denied. . . . . . . . . . . . . . 5, 20

*Tealwood Constr., Inc. v. Scottsdale Ins. Co.*,
     2003 WL 22790856 (N.D. Tex. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Technomedia Inter., Inc., International Training Serv. Inc.*,
     2010 WL 3545662, \*\*5-6 (S.D. Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*TGA Dev., Inc. v. Northern Ins. Co.,*
     62 F.3d 1089 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Utex Communications Corp. v. Public Utility Com'n,*
     514 F.Supp.2d 963 (W.D. Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*U.S. for Use & Benefit of Straus Syst., Inc. v. Assoc. Indem. Co.*,
     1991 WL 365064, \*3 (E.D. Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zamora-Garcia v. Moore*,
     2006 WL 2663802, \*12 (S.D. Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zurich Am. Ins. Co. v. Nokia, Inc.,*
     268 S.W.3d 487 (Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 18, 20

## Rules

9A Couch on Insurance § 129:16.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Codes

Tex. Ins. Code Ann. § 542.060. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **EWING CONSTRUCTION CO., INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **vs.** | § | |
| | § | **2:10-cv-00256** |
| **AMERISURE INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT AMERISURE INSURANCE COMPANY'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**RESPONSE TO PLAINTIFF EWING CONSTRUCTION INC.'S**
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

COMES NOW Defendant Amerisure Insurance Company ("Amerisure") and files this Cross-Motion For Partial Summary Judgment and Response to Plaintiff Ewing Construction Inc.'s ("Ewing") Motion For Summary Judgment [Doc. 19], and would show that the Contractual Liability Exclusion and other Business Risk exclusions preclude Ewing's attempt to mutate a liability policy into a performance bond for construction defects, as follows:

**I.**

**SUMMARY:**
**THE CONTRACTUAL LIABILITY EXCLUSION AND OTHER**
<u>**BUSINESS RISK EXCLUSIONS PRECLUDE ALL COVERAGE**</u>

This is an insurance coverage case in which Ewing seeks to turn a Commercial General Liability ("CGL") Policy which *excludes contractual liability* into a performance bond guaranteeing the quality of Ewing's work. In the Underlying Lawsuit, Ewing was sued by Tuloso-Midway for allegedly breaching a contract to construct tennis courts. The courts are cracking. In essence, Tuloso-Midway claims it did not receive the benefit of its bargain from Ewing (solid courts).

<u>**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE**</u> **- Page 1**

However, the CGL Policy is designed to exclude coverage for "the contractual liability of the insured for [a] loss which takes place due to the fact that the [] completed work was not that for which the other party had bargained." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 500 (Tex. 2008). To effectuate this design, the Amerisure Policy contains a series of business risk exclusions, including the fundamental Contractual Liability Exclusion, which preclude all coverage for contractually-dependent claims against Ewing. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010); *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262 (5th Cir. 2009). Therefore, based on these Business Risk Exclusions, Amerisure seeks a declaration that it has no duty to defend nor indemnify Ewing from the Underlying Lawsuit.

**II.**

**FACTUAL SUMMARY:**
**TULOSO-MIDWAY SUED EWING SEEKING**
**"THE DIFFERENCE BETWEEN THE VALUE OF THE TENNIS**
**COURTS ... AS CONTRACTED FOR AND AS ACTUALLY DELIVERED"**

The Underlying Lawsuit at the heart of this coverage action is based on a $2 million contract between Ewing and Tuloso-Midway Independent School District ("Tuloso-Midway") to build a series of tennis courts. (Underlying Lawsuit, Doc. 18-18, STIP 000877; Doc. 18-17, STIP 000837; Doc. 18-16, STIP 000822.) Under the contract, Ewing "undertook to act as construction contractor and to construct the [tennis] courts ... in accordance with the plans and specifications." (*Id.* at ¶10.)

However, when the tennis courts allegedly began "flaking, crumbling, and cracking," Tuloso-Midway sued Ewing for breach of contract.[1] (STIP 000878, at ¶12; STIP 000838; STIP 000823.) There is no allegation that any other property was damaged. Specifically, Tuloso-Midway

---

[1] Ewing offered to correct its allegedly flawed construction work regarding the tennis courts at a cost of nearly $1 million. (*Id.* at ¶13.) Nonetheless, Tuloso-Midway deemed this extra $1 million "corrective" option inadequate. (*Id.*)

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 2**

claims that Ewing failed "to complete construction in accordance with the contract plans and specifications." (*Id.* at ¶20.a.)  Tuloso-Midway also claims that Ewing was somehow "negligent" in failing to carry out its contractual duties.  (*Id.* at ¶21.)

The Underlying Lawsuit "seeks damages from Ewing with regard to construction of a tennis facility in Corpus Christi, Texas *pursuant* to a contract between Ewing and Tuloso-Midway[.]" (Doc. 18, at ¶3;  See Doc. 18-19, emphasis added.)  In other words, Tuloso-Midway did not receive the benefit of its bargain.  The Underlying Lawsuit against Ewing seeks damages for the "difference between the value of the tennis courts in question as contracted for and as actually delivered [by Ewing]."  (STIP 000882, at ¶28e;  STIP 000843;  STIP 000827.)  It also seeks damages for the "[c]osts of repairs and remediation ... including the costs of removing the unusable courts[.]"  (*Id.* at ¶28d.)  Significantly, Tuloso-Midway does *not* seek any damages outside of the contract.

Ewing also purchased a *performance bond* from Liberty Mutual.  Unlike the Amerisure CGL Policy, the performance bond is actually designed to guarantee the quality of Ewing's work.  It is obligated to pay if Ewing fails to "perform the work in accordance with the plans, specifications and contract documents."  (STIP 000886;  STIP 000847.)  This explains why Tuloso-Midway also sued the performance bond carrier, Liberty Mutual, in the Underlying Lawsuit seeking "recovery from the [the performance bond] *all* sums claimed against Ewing Construction Company in this Petition." (STIP 000881, at ¶26;  STIP 000842.)

Amerisure issued a series of CGL Policies to Ewing, policy numbers CPP2037436-02, CPP2037436-03, CPP2037436-04, and CPP2037436-05, with continuous effective dates from June 1, 2007 to June 1, 2011 (collectively, the "Policies").  In contrast to the performance bond, all of the Amerisure Policies contain Business Risk exclusions, including the Contractual Liability Exclusion,

which are designed to preclude coverage for damages that are dependent on a contract.  (Doc. 18-3, STIP 000129-32;  Doc. 18-6, STIP 000349-52;  Doc. 18-10 STIP 000536-39; and Docs. 18-14 and 18-15, STIP 000770-73, at §§2.b., 2.j., 2.m., and 2.n.)[2]

## III.

### STATEMENT OF THE ISSUES: AMERISURE SEEKS A DECLARATION THAT IT OWES NO DUTY TO DEFEND NOR INDEMNIFY EWING

Amerisure seeks a ruling as a matter of law on the following grounds:

1. Amerisure does not owe Ewing a duty to defend, nor indemnify, with regard to the Underlying Lawsuit[3] filed by Tuloso-Midway, as the allegations are excluded by the Contractual Liability Exclusion and other Business Risk exclusions, including those for "recall of work," "damage to property," and "impaired property."

2. Additionally, as Amerisure did not breach its duty to defend, it did not breach the Prompt Payment Section of the Insurance Code.

## IV.

### THE CGL POLICY IS NOT DESIGNED TO FUNCTION AS A PERFORMANCE BOND OR GUARANTEE THE QUALITY OF EWING'S CONSTRUCTION WORK

Before getting bogged down in the details, it is necessary to appreciate the overall design and intent of the CGL Policy.  A recent decision from the Northern District of Texas, affirmed by the Fifth Circuit just two weeks ago, summarizes the purpose of the CGL Policy as it relates to coverage for construction-related damages between owners and contractors, as follows:

---

[2] The 2009-10 and 2010-11 Policies also contain a limited "Repair and Rework Coverage" endorsement, which provides limited expense indemnification for expenses related to repairing and redoing an insured's defective construction under certain limited circumstances.  (STIP 000572-76, 000752-56.)  Ewing has not sought coverage under this endorsement.

[3] The "Underlying Lawsuit" collectively refers to Docs. 18-18, 18-17, and 18-16.

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 4**

> [A]s a general proposition, the purpose of liability insurance coverage for a builder is to protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product. ... [I]f an insurance policy were to be interpreted as providing coverage for construction deficiencies, the effect would be to "enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work." Ordinarily, this is not the intended function of liability insurance. And, as the Fifth Circuit [has] explained ... a case involving the scope of liability insurance coverage for a builder, "[a] comprehensive general liability policy does not cover [the] cost of doing business."[4]

Therefore, as recognized by Texas courts, the CGL Policy is designed to cover fortuitous events that are beyond the insured's control. What the Policy does not cover, and specifically excludes, is contractual liability that the insured voluntarily assumes. The insured's ability to contract – and thereby create contractual risks – is infinite, and entirely within the insured's control. These voluntary business risks contravene the purpose of liability.

Ignoring this design, Ewing seeks to transform its CGL Policy a performance bond which guarantees the quality of its work. Under Ewing's view, if it builds a bad foundation and gets sued, its CGL carrier must pay for the deficiencies. Ewing is in a win-win situation: regardless of whether its work is good or bad, it owes nothing and keeps all profit.

In arguing that Amerisure should cover the cost to repair and replace Ewing's defective work, Ewing somehow claims that its "performance bond" theory finds support in Texas law. In its Partial Motion, Ewing relies primarily upon *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007). However, Ewing fails to inform this Court that *Lamar Homes* expressly recognizes

---

[4] *David Lewis Builders, Inc. v. Mid-Continent Cas. Co.,* 720 F. Supp. 2d 781,785 (N.D. Tex. 2010) *aff'd*, 10-10432, 2011 WL 365279 (5th Cir. 2011) (citations omitted) (citing *T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,* 784 S.W.2d 692, 694-95 (Tex.App.–Houston [14th Dist.] 1989, writ denied); and *Hartford Cas. Co. v. Cruse,* 938 F.2d 601, 604 (5th Cir. 1991)).

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE** - **Page 5**

that virtually all claims of faulty workmanship are excluded from coverage.

In *Lamar Homes,* the Supreme Court found that claims of construction defects may sometimes come within the *insuring agreement* of the CGL Policy (the *broadest* part of the policy). *Id.* ("The CGL's insuring agreement grants the insured *broad* coverage for property damage and bodily injury liability, which is then *narrowed* by exclusions that 'restrict and shape the coverage otherwise afforded.'") (emphasis added). However, seeking to harmonize its holding with the overall design of the CGL Policy, the *Lamar Homes* Court recognized that "**more often**" than not, **"faulty workmanship will be excluded from coverage by specific *exclusions* because that is the CGL's structure."** *Id.* (emphasis added). Therefore, exclusions will almost always negate coverage for costs to repair and replace the insured's defective work.

In particular, the CGL Policy contains a number of "Business Risk" exclusions, that "are intended to provide coverage for tort liability, **not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.**" *Nokia, Inc.*, 268 S.W.3d at 500 (Tex. 2008) (citing 9A Couch on Insurance § 129:16) (emphasis added). This case principally turns on the most fundamental of these specific "Business Risk" exclusions – the Contractual Liability Exclusion – that was designed to negate coverage for contractual risks assumed by the insured. Importantly, "[t]he contractual liability exclusion was not at issue in *Lamar Homes .*" *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 132 (Tex. 2010); *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262, 266 n. 4 (5th Cir. 2009).

Indeed, in a case cited by Ewing in its Partial Motion,[5] the Fifth Circuit recently recognized

---

[5] (See Ewing's Partial Motion For Summary Judgment, Doc. 19, at pg. 12.)

that a similar construction defect dispute (it also involved an owner suing an insured general contractor for the repair and replacement of its work) came within the insuring agreement under *Lamar Homes*.  But, as predicted in *Lamar Homes*, the Contractual Liability Exclusion still negated all coverage for these contractually assumed risks.  *Hardscape*, 578 F.3d at 265-266.

Further, the fact that there is no coverage under the CGL Policy is demonstrated by a separate form of coverage issued by Amerisure, called the "Repair and Rework Coverage" endorsement. Unlike the main CGL form at issue here, this separate endorsement expressly provides limited coverage for expenses for construction defects.[6]  Yet, even Ewing seems to recognize that such endorsement does not provide coverage for this particular situation.  (It has not sought coverage under this endorsement.)  Instead, Ewing relies wholly on the Policies' general CGL coverage form.

It would do violence to the Policies to ignore the "Repair and Rework Coverage" endorsement, and look instead to general portions of the policy that provide coverage for accidents that cause property damage.  This would be like a heart patient arguing that the court should ignore a specific endorsement on his health policy that specifically addresses coverage for heart disease, but asking the court to find heart transplant coverage under more general provisions that address disease in general.  Such an approach renders the endorsement meaningless, a result prohibited by Texas law. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462,464 (Tex. 1998).

---

[6] This endorsement has no defense obligation.  It only provides expense indemnification, up to a sublimit of $50,000, in certain situations where the insured's work impairs other property.

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 7**

**V.**

**THE CONTRACTUAL LIABILITY EXCLUSION**
**<u>NEGATES ALL COVERAGE</u>**

**A.      <u>The Exclusion Applies To General Breach Of Contract Claims</u>**

The first Business Risk Exclusion designed to effectuate the Policy's design of covering fortuitous risks, and not to reimburse contractors for their own bad work, is the Contractual Liability Exclusion. The Contractual Liability Exclusion targets risks created by contract, and removes them from coverage. Specifically, Amerisure's Policies exclude coverage for contractual liability, as follows:

> **b.      Contractual Liability**
>
> "[P]roperty damage" for which the insured is obligated to pay damages **by reason of the assumption of liability in a contract or agreement.**

(Doc. 18, STIP 000129, at §2.b.; STIP 000349, at §2.b.; STIP 000536, at §2.b.; STIP 000770, at §2.b.; emphasis added.)[7] There is also a limited exception to the Exclusion restoring coverage for liability "[t]hat the insured would have in the absence of the contract or agreement." *Id.*

Interpreting the Exclusion and the exception leads to the conclusion that coverage is precluded when the damages sought against the insured are *dependent* on the contract. However, the exception is careful to preserve coverage for risks which exist *independently* of the insured's contractual relations. For example, an insured contractor may agree in its contract to use "reasonable care" to avoid injury to third parties while performing its work. If a third party is injured, she may choose to sue the contractor for breach of its contract under a third party beneficiary theory; or she

---

[7] As it is an exclusion, Amerisure has the burden to demonstrate that the Exclusion "arguably applies, [then] the burden then shifts back to the insured to show that the claim does not fall within the exclusion or that it comes within an exception to coverage." *American Home Assur. Co. v. CAT Tech, L.L.C.*, 2010 WL 2331395, *11 (S.D. Tex. 2010).

**<u>AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE</u> - Page 8**

may pursue a tort theory. Presuming she elects to proceed in contract, the insured's resulting liability would escape the Contractual Liability Exclusion, to the extent the insured would have been liable in tort anyway. This design makes perfect sense. Just as the insured cannot create covered risks by contract, it also cannot lose coverage just because liability it would otherwise owe under general legal principles happens to be assumed in a contract.

Recently, the Supreme Court of Texas recognized the above interpretation of the Contractual Liability Exclusion and its exception. The Supreme Court found that the Exclusion "means what it says: it excludes claims when the insured assumes liability for damages in a contract or agreement, except when ... the insured would be liable absent the contract or agreement." *Gilbert*, 327 S.W.3d at 128 (Tex. 2010). In *Gilbert,* the Exclusion precluded all coverage because the insured only faced liability that was dependent on the existence of an underlying contract. *Id.* The insured would not have been liable, except for obligations the insured assumed in a contract. *Id.*

The Court also rejected attempts to limit the scope of the Exclusion, such as the notion that it was only limited to indemnification agreements. *Id*. at 127-28. Indeed, to reinforce its interpretation of the Contractual Liability Exclusion precluding coverage for *all* contractually-dependent claims, the Supreme Court cited a string of precedents from other jurisdictions which, according to the Court, interpret the Exclusion **"as we do."** *Id.* at \*129-30, n.9 (emphasis added). For each of these cases, the Supreme Court saw fit to summarize the reason why the case represented its view in parentheses behind the citation, as follows:

- "[A]ny claim that is **dependent on the existence of an underlying contract** is not covered";

- "[The Exclusion] is simply further clarification in the policy that contract-based claims are not covered";

- "[T]he plain meaning of the policy excludes a breach of contract claim from coverage";

- "[The] exclusion . . . plainly excluded coverage for contractual claims".

*Gilbert*, 327 S.W.3d at 129-30, n.9 (emphasis added).[8]   Furthermore, one of these cases found that the Contractual Liability Exclusion applied to negate coverage for a similar construction defect claim where a general contractor/insured (like Ewing here) was being sued for the repair and replacement of its bad work.  *Id.* (citing *TGA Dev., Inc. v. Northern Ins. Co.*, 62 F.3d 1089, 1091-92 (8th Cir. 1995) ("We think that the language plainly excludes coverage for contractual claims made for [the insured's] failure to provide [the owner] with a condominium unit free from defects.")).

**B.     Economic Loss Cases Are Always Excluded From Coverage, As They Fail To Meet The Narrow Exception To The Exclusion**

Although the Supreme Court of Texas dealt with facts that were not on all fours with the present case, the Fifth Circuit recently found that the Exclusion precluded a duty to defend for a similar construction defect claim because these types of claims are dependent upon the insured's contract.  *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262, 267 (5th Cir. 2009).  There, the Fifth Circuit recognized that "the scope of [the Contractual Liability] exclusion turns on the difference between tort and contract allegations in an underlying lawsuit."  *Id.*  To make this determination whether the underlying lawsuit was a contract or tort claim, the Fifth Circuit applied the economic loss doctrine.  *Id.* (citing *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494-95 (Tex. 1991)).[9]  The court concluded that the Exclusion precluded coverage because the underlying lawsuit

---

[8] Further, in each of these decisions cited by the Supreme Court of Texas in *Gilbert,* coverage was found to be excluded by the Contractual Liability Exclusion in situations where the insured was sued for *direct* contractual liability (*i.e.,* an owner suing a contractor).

[9] Indeed, the Supreme Court of Texas appears to agree with the Fifth Circuit that its is appropriate to apply the economic loss doctrine has application in certain cases when determining whether the Contractual Liability Exclusion negates coverage.  Specifically, in interpreting the Exclusion and its exception in *Gilbert*, the Supreme

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 10**

only alleged a breach of contract under the economic loss doctrine. As such, economic loss cases will always be excluded, because there is no potential for liability independent of the contract.

Not only is the *Hardscape* decision favorably cited in the Supreme Court's *Gilbert's* decision (albeit on different grounds), it is even favorably cited by Ewing in its Partial Motion. *Gilbert,* 327 S.W.3d at 124; (Doc. 19, Ewing's Partial Motion For Summary Judgment, at pg. 12.)[10] Therefore, as demonstrated by *Hardscape* and *Gilbert*, the Contractual Liability Exclusion negates coverage when the claim is dependent upon a contract. And, as recognized in *Hardscape* and implicitly in *Gilbert,* in determining whether the underlying lawsuit is dependent on the contract*,* it is appropriate to apply the economic loss doctrine.

The contours of the Texas economic loss doctrine are well-established. To determine whether liability is dependent upon a contract (triggering the Exclusion), Texas courts do not rely upon legal labels, such as negligence. Instead, Texas courts "look to the substance of the cause of action." *Hardscape,* 578 F.3d at 267 (5th Cir. 2009).[11] "When the only loss or damage is **to the subject matter of the contract**, the plaintiff's action is ordinarily on the contract", and the Contractual Liability Exclusion will apply to negate coverage. *Id.* at 267 (quoting *DeLanney,* 809 S.W.2d 493, 494-95 & n. 2 (Tex. 1991)) (emphasis added). A loss is to the subject matter of the contract when the owner's "success necessarily would depend on their establishment of the

---

Court expressly cites to the portion of its prior *DeLanney* decision applying the economic loss doctrine. *Id.* at 134.

[10] Although the Fifth Circuit's decision in *Hardscape* considered the Exclusion in the context of an indemnification agreement, the Texas Supreme Court recently made clear that the Exclusion extends to negate coverage for *all* types of contractually assumed liability. *Gilbert,* 327 S.W.3d at 128-132. Specifically, the Court found that the Exclusion was not limited to indemnity agreements, but applies "without qualification to liability assumed by contract," subject to two narrow exceptions. *Id.* at 129 (emphasis added).

[11] Citing to *Jim Walter Homes,* 711 S.W.2d at 617-18 (Tex.1986)) (emphasis added); *See Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) (focusing on "the origin of damages" and ignoring legal label of "negligence" plead in insurance coverage dispute).

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 11**

contractual relationship between [the owner] and [the contractor] a breach of a duty or duties created by that contract." *David Lewis Builders*, 720 F. Supp. 2d at 786.

The Supreme Court of Texas has applied the economic loss doctrine to a similar construction defect case involving a crumbling foundation. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). There, homeowners sued a general contractor for damages arising out of the construction of their house, claiming that the contractor breached its contract and that it committed "negligence."[12] The damages sought included damages for the replacement of the foundation, as "[t]he concrete [of the foundation] was crumbling and could easily be broken off." *Id.* Despite the trial court and lower appellate court finding that the general contractor acted "negligently" (ostensibly to obtain an award of exemplary damages), the Supreme Court of Texas held that the damages obtained against the contractor "**can only be characterized as a breach of contract.**" *Id.* at 618 (Tex. 1986) (emphasis added). As the Court recognized, the homeowners' injuries were simply due to the fact that "**the house they were promised and paid for was not the house they received.**" *Id.* (emphasis added). This language is virtually identical to the damages sought in the Underlying Lawsuit. (STIP 000882, at ¶28.e; STIP 000843; STIP 000827) ("The difference between the value of the tennis courts in question as contracted for and as actually delivered.")

Similarly, the Fifth Circuit's *Hardscape* decision also involved a underlying lawsuit by an owner against a general contractor for construction defects. There, pursuant to a contract, a general contractor agreed to build a pool and surrounding deck. After the construction, the pool began to crack. The owner of the property then sued the general contractor complaining that the contractor

---

[12] *Jim Walter Homes, Inc. v. Reed*, 703 S.W.2d 701, 705 (Tex. App.–Corpus Christi 1985) *aff'd in part, rev'd in part sub nom.*, 711 S.W.2d 617 (Tex. 1986).

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE** - **Page 12**

breached its contract due to its faulty design and construction work.  The owner threw in claims of "negligence" and "gross negligence" against the contractor.  *Id.* at 265

Despite the label of "negligence", the Fifth Circuit held that the underlying petition sounded solely in contract.  The Fifth Circuit, citing *Jim Walter,* held the following:

> [The owner] made *contract claims* when it alleged that [the contractor's] failure to properly design and construct the pools caused cracks in the walls and floor of the pool, aesthetic damage, pool structural damage, and the like. Similarly, the resulting need to **identify, diagnose, and correct** the design and construction defects gave rise only to contract claims.

*Id.* at 268 (emphasis added).  Indeed, the Fifth Circuit noted that "these allegations are *easily classified* as giving rise to contract claims – namely, because the damages occurred only to the subject matter of the [pool] contract, and because no liability would arise independently of the contract."  *Id.* (emphasis added).  Thus, looking past the label of "negligence," the Fifth Circuit held that the Contractual Liability Exclusion negated a duty to defend for these contract-dependent claims.

## C.   Tuloso-Midway's Claims Against Ewing Sound Only In Contract, Triggering The Contractual Liability Exclusion

Here, as in *Jim Walter Homes* and *Hardscape,* Ewing only faces claims in the Underlying Lawsuit that are dependent on its contract.  The Underlying Lawsuit seeks to hold Ewing liable because the tennis courts constructed by Ewing were not "of the quality that were promised and contracted for."  (STIP 000878, at ¶13;  STIP 000838;  STIP 000823.)  Tuloso-Midway claims that Ewing breached its "contractual commitments," and failed to construction the tennis courts "in accordance with the plans and specifications[.]"  (STIP 000880, at ¶20; STIP 000840; STIP 000823-24.)[13]

---

[13] The Underlying Lawsuit also alleges that Ewing breached its contract by failing to "properly retain and supervise subcontractors."  (STIP 000880, at ¶ 20.d; STIP 000840; STIP 000824.)  This claim sounds only in contract.  *See David Lewis Builders*, 720 F. Supp. 2d 781, 790 (N.D. Tex. 2010), *aff'd*, 10-10432, 2011 WL 365279

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 13**

Based on this purported breach of contract, Tuloso-Midway seeks the same economic loss damages at issue in *Jim Walter Homes* and *Hardscape*.  Tuloso-Midway seeks to recover the "difference in value of the tennis courts in questions as contracted for and as actually delivered." (*Id.* at ¶28e.); *See Jim Walter Homes,* 711 S.W.2d at 618.  It also seeks to recover the costs to repair and replace the tennis courts.  *Compare* STIP 000882, at ¶28; *with Hardscape*, 578 F.3d at 269 (5th Cir. 2009) ("[T]he resulting need to identify, diagnose, and correct the design and construction defects gave rise *only* to contract claims.") (emphasis added).  In addition, Tuloso-Midway seeks to recover for loss of use of the courts, also purely contractual damages. (STIP 000882, at ¶28.b; STIP 00843; STIP 000827); *E.g., CBI NA-CON, Inc. v. UOP Inc.*, 961 S.W.2d 336, 340 (Tex.App.– Houston [1st Dist.] 1997, rev. denied) (loss of use is a purely contractual damage under the economic loss doctrine).  Therefore, to paraphrase the Fifth Circuit in *Hardscape*, "these allegations are *easily classified* as giving rise to contract claims – namely, because the damages occurred only to the subject matter of the [Tuloso-Midway/Ewing] contract, and because no liability would arise independently of the contract." *Hardscape,* 578 F.3d at 268 (emphasis added).

Finally, the fact that the claims in the Underlying Lawsuit are wholly dependent on the contract is demonstrated by the presence of the performance bond, Liberty Mutual.  The Underlying Lawsuit "seeks recovery from the Liberty Mutual Defendants *all* sums claimed against Ewing Construction Company in this Petition."  (STIP 00881, at ¶26; STIP 000842.)   However, performance bonds only provide coverage for claims sounding in contract. *E.g., Houston Fire & Cas. Ins. Co. v. Riesel Indep. Sch. Dist.*, 375 S.W.2d 323, 326-27 (Tex.Civ.App.– Waco 1964, writ

(5th Cir. 2011) ("The foundation was designed by a person acting on behalf of Lewis as its subcontractor.  The design of a proper foundation was one of the contractual obligations Lewis had to the [homeowners] pursuant to their construction contract.")  Indeed, if Tuloso-Midway had sued Ewing's subcontractors, those claims would sound only in contract as well.  *Schambacher v. R.E.I. Elec., Inc.*, 2010 WL 3075703, *7 (Tex.App.–Fort Worth 2010, no pet.); *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 90-91 (Tex.App.–Houston [14th Dist.] 2007, pet. denied).
**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 14**

ref'd n.r.e.).   Liberty Mutual's is no exception – it's bond triggered only when Ewing fails to "perform the work in accordance with the plans, specifications and contract documents."  (STIP 000886; STIP 000847.)  Therefore, this claim just further hammers home the point that the *entire* suit against Ewing sounds solely in contract.

### D.   The Underlying Lawsuit Contains No Independent Tort Claims

Despite the "easy" classification of the Underlying Lawsuit as solely a breach of contract suit based on the pleadings, Ewing will likely argue that it faces the "potential" of tort liability.  In crafting this argument, Ewing will likely point to the fact that the Underlying Lawsuit uses the legal label of "negligence." (Ex. A7, AME 0229 at ¶56.)  Based on this label, Ewing may argue that the Underlying Lawsuit does not depend on duties Ewing assumed in its contract.  This is a red herring, and the Court should not take the bait.

In particular, the bare-bones count of "negligence" in the Underlying Lawsuit merely re-characterizes Ewing's contractual duties.  A quick glance at the Underlying Complaint reveals this not-so-subtle sleight of hand.  Tuloso-Midway alleges that *the same failures* which give rise to its claim for breach of contract also give rise to its claim for "negligence"!  (They are just placed in a different order.)  Specifically, the Underlying Lawsuit alleges as follows:

> 20.   Defendant Ewing Construction has breached its contractual commitments, proximately causing damages to Plaintiff. On information and belief, Plaintiff says that Defendant Ewing and/or its subcontractors **breached its contract** in the following respects:



a)     Failing to complete construction in accordance with the contract plans and specifications;

b)     Failing to exercise ordinary care in the preparation, management and execution of construction;

c)     Failing to perform in a good and workmanlike manner; and

d)     Failing to properly retain and supervise subcontractors.

21.     Furthermore, Defendant Ewing Construction and/or its subcontractors was/were guilty of **negligence** proximately causing damage to Plaintiff in the following respects:

a)     Failing to properly prepare for and manage the construction:

b)     Failing to properly retain and oversee subcontractors;

c)     Failing to perform in a good and workmanlike manner; and

d)     Failing to properly carry out the construction so that is was in completed in accordance with the plans and specifications.

(STIP 000880, at ¶¶20-22, emphasis added; STIP 000841; STIP 000823, 000826-27.)

The fact that the negligence claim is a virtual carbon copy of the breach of contract claim is further confirmed by the Underlying Lawsuit's "catch-all" negligence allegation. This allegation simply states that Ewing acted negligently because it breached its duty to Tuloso-Midway "to **use ordinary care in the performance of [its] contract[],** proximately causing damages to Plaintiff." (STIP 000830, at ¶ 23, emphasis added.); *See David Lewis Builders*, 720 F. Supp. 2d at 786 ("Similarly, the Count V negligence theory of recovery is based directly on obligations assumed by Lewis under its contract with the Blakes, as is clearly shown by the allegations on which the negligence theory is expressly predicated that Lewis owed the Blakes 'a duty to perform its contract

with care, skill, reasonable expedience and faithfulness'").[14] Thus, the negligence theory of recovery is clearly predicated upon Ewing's assumption of liability in its contract agreement with Tuloso-Midway. *Id*. at 786-87; *Hardscape*, 578 F.3d at 268. Like in *Hardscape* and *David Lewis Builders,* Ewing's legal label of negligence does not alter the fact that its claims for damages are entirely dependant on the contract.

As no liability would arise independent of the contract between Ewing and Tuloso-Midway, the Contractual Liability Exclusion precludes Ewing from collecting under Amerisure's Policies. *See Hardscape*, *Gilbert, supra.* Therefore, this Court should grant summary judgment in favor of Amerisure.

> **E.      Ewing's Likely Arguments Fail To Mutate The Amerisure CGL Policies Into Performance Bonds Covering Ewing's Business Risks**

In previous correspondence between the parties, Ewing has made numerous creative arguments that the Underlying Lawsuit is covered. However, as demonstrated below, each of these creative arguments fail.

> **1.      As Recognized By The Supreme Court Of Texas And Fifth Circuit, The Economic Loss Applies In The Duty To Defend Context**

Grasping at loose *dicta* in *Gilbert,* Ewing may contend that the Contractual Liability Exclusion only applies in the duty to *indemnify* context, and not in the duty to *defend* context at issue

---

[14] It must be noted that Judge McBryde decided *David Lewis Builders* just prior to the *Gilbert* decision from the Supreme Court of Texas. At that time, Fifth Circuit precedent and the majority of Texas appellate precedent incorrectly held that the contractual liability exclusion applied only in the context of indemnification agreements. Nonetheless, even faced with this avalanche of caselaw, Judge McBryde boldly declared his suspicion that "the true intent of the insurance company might well have been ignored in the court opinions mentioned above." *David Lewis Builders,* 720 F. Supp. 2d at 788. He was inclined to apply the exclusion, but "ha[d] no choice but to follow the Fifth Circuit and Texas court precedent." *Id.*

Judge McBryde was right. A few months after his bold declaration, the Texas Supreme Court resoundingly adopted Judge McBryde's reading of the exclusion, and overruled the court opinions that drew his ire. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 130 (Tex. 2010) (disapproving of the Fifth Circuit's holding in *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 726 (5th Cir. 2000)).

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 17**

here. Such an argument ignores the fact that the Fifth Circuit's decision in *Hardscape* finds that the Contractual Liability Exclusion precludes coverage in the *duty to defend* context based on the economic loss doctrine. *Hardscape*, 578 F.3d at 270. Similarly, such an argument also ignores the recent Texas Supreme Court decision finding that a similar "Business Risk" exclusion precluded coverage in the duty to defend based on the economic loss doctrine. *Nokia, Inc.*, 268 S.W.3d at 500 (Tex. 2008). Thus, any imagined "duty to indemnify" limitation is contrary to binding precedent.

Further, there is no language in the Exclusion that would limit it only to the duty to indemnify context. And, as reaffirmed by the Supreme Court in *Gilbert,* courts should not judicially re-write exclusions by inserting new terms into the Exclusion. *Gilbert*, 327 S.W.3d at 135 ("If we held as Gilbert proposes, we would be remaking the parties' insurance agreement. We decline to do so.").

Nonetheless, Ewing may argue that the Supreme Court in *Gilbert* somehow inserted this limiting language into the Exclusion based on *dicta* in its decision. *Id.* at 132-33. However, such a strained interpretation of *Gilbert* cannot survive even the most basic analysis. Specifically, in responding to an argument that the Contractual Liability Exclusion would somehow be overturning *Lamar Homes,* the Court pointed out that *Gilbert* involved the duty to indemnify (based on actual facts), and not the duty to defend (based on the pleadings). *Id.* at 132-133.

This distinction was significant to the facts in *Gilbert*. There, based upon the eight-corners doctrine, a duty to defend was owed (and the insurer defended). The *Gilbert* petition alleged a claim *not subject to the economic loss doctrine* – an adjacent building had been flooded, causing damages to a third party outside of the subject matter of the insured's construction contract. *Id.* at 122. Thus, the underlying pleadings against Gilbert alleged *potentially* viable tort claims. (These claims ultimately failed due to governmental immunity). *See Id.* As the economic doctrine was not viable in *Gilbert*, it was necessary for the insurer in *Gilbert* to wait until this negligence claim was

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 18**

dismissed in order to argue that the Contractual Liability Exclusion precluded any duty to indemnify. *See Id.*[15]

In contrast, and as demonstrated above, the Underlying Lawsuit easily falls within the economic loss doctrine. Here, and unlike in *Gilbert,* the economic doctrine establishes that the allegations against Ewing are dependent on a contract.

Ewing's next attack will likely be that the standard governing the duty to defend is somehow incompatible with the economic loss rule. However, such a belief is belied by Texas law. The standard in applying the eight corners rule governing the duty to defend is virtually identical to standard with regard to the economic loss doctrine. Specifically, both the economic loss doctrine and duty to defend standard require courts to ignore self-serving legal labels, and focus only on the subject matter of the loss. *Compare Hardscape*, 578 F.3d at 267 (in determining whether a claim is an economic loss, "Texas courts ... focus[] on the source of liability and the nature of the plaintiff's loss"); *with Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82-83 (Tex. 1997) (in determining the duty to defend, courts must focus on the "origin" of the damages). Furthermore, in the duty to defend context, courts may only consider the allegations in the underlying petition. *Hardscape*, 578 F.3d at 267. Similarly, Texas law has consistently recognized that the economic loss doctrine can be applied based only on the allegations in the petition. *Hardscape*, 578

---

[15] Further, Ewing's belief that the Supreme Court of Texas somehow prejudged the issue before this Court is belied by the *Gilbert* decision itself. Specifically, the Supreme Court recognized that "speculation about coverage of insurance policies based on surmised factual scenarios is a risky business because small alterations in the facts can warrant completely different conclusions as to coverage. It is proper that we await a fully developed, actual case to decide an issue not presented here." *Id.* at 135. Therefore, it is clear that the Supreme Court was only referencing the facts in *Gilbert* when recognizing the distinction between the duty to defend, and indemnify. It was not prejudging future cases.

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 19**

F.3d at 270; *Nokia, Inc.*, 268 S.W.3d at 500.[16]  Therefore, Ewing's likely argument seeks to upend all of these precedents, and call into doubt the viability of the economic loss doctrine in Texas.

### 2. The *Swinerton* Decision Does Not Support Ewing, As It Was Incorrectly Decided

Finally, it is possible that Ewing may rely upon a recent district court decision interpreting the Contractual Liability Exclusion, *Swinerton Builders v. Zurich Am. Ins. Co.*, 2010 WL 4919073 (S.D. Tex. 2010) (currently abated).  This decision is not yet final, and Amerisure respectfully submits the court's preliminary ruling is incorrect.

As an initial matter, the *Swinerton* holding is irreconcilable with the *Hardscape* decision*,* where the Fifth Circuit had no difficulty applying the Contractual Liability Exclusion in a similar situation.  In *Swinerton*, neither the court nor the parties discussed, or even cited to, *Hardscape*.

Furthermore, in reaching its holding, the court in *Swinerton* applied an incorrect reading of the Exclusion's exceptions.  The court failed to focus on the insured seeking coverage (Swinerton),

---

[16] *E.g., David Lewis Builders*, 720 F. Supp. 2d at 785 (applying economic loss doctrine to the duty to defend); *T.C. Bateson Constr. Co. v. Lumbermen's Mut. Cas. Co.*, 784 S.W.2d 692 (Tex.App.–Houston [14th Dist.] 1989, writ denied) (same); *Tealwood Constr., Inc. v. Scottsdale Ins. Co.*, 2003 WL 22790856 (N.D. Tex. 2003) (same); *Jim Johnson Homes v. Mid-Continent Cas. Co.*, 244 F.Supp.2d 706, 716-17 (N.D. Tex. 2003) (same), partially overruled on other grounds in 242 S.W.3d 1 (Tex. 2007); *See also Technomedia Intern., Inc. v. International Training Serv. Inc.*, 2010 WL 3545662, **5-6 (S.D. Tex. 2010) (applying economic loss doctrine to pleadings); *Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2009 WL 4016117, **3-4 (N.D. Tex. 2009) (same)*; Grimes Constr., Inc. v. Great American Lloyds Ins. Co.*, 188 S.W.3d 805, 812-18 (Tex.App.–Fort Worth 2006, *reversed on other grounds*, 248 S.W.3d 171 (Tex. 2008) (same)*; UTex Communcations Corp. v. Public Utility Com'n*, 514 F.Supp.2d 963, 972 (W.D. Tex. 2007) (same); *Zamora-Garcia v. Moore*, 2006 WL 2663802, *12 (S.D. Tex. 2006) (same); *Tayssoun Transp., Inc. v. Universal Am-Can, Ltd.*, 2005 WL 1185811, *23 (S.D. Tex. 2005) (same); *Hansberger v. EMC Mort. Corp.*, 2009 WL 2264996, **3-4 (Tex.App.–San Antonio 2009, rev. denied) (same); *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, 281 S.W.2d 237, 253 (Tex.App.–Dallas 2009, rev. denied) (same); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 815-17 (Tex.App.–Fort Worth 2006, rev. denied) (same); *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 161 (Tex.App.–Eastland 2001, rev. denied) (same); *Botello v. Parkway Transport, Inc.*, 1995 WL 540245, *3 (Tex.App.–San Antonio 1995, no pet.); *U.S. for Use & Benefit of Straus Syst., Inc. v. Assoc. Indem. Co.*, 1991 WL 365064, *3 (E.D. Tex. 1991) (same).

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE - Page 20**

and instead focused on the named insured who had bought the policy (Cypress Industrial).[17]
However, as recognized in *Hardscape*, this approach is incorrect. *See Hardscape*, 578 F.3d at 266-
267 (finding the exception is triggered "if [the underlying lawsuit] properly alleges a tort cause of
action against [the contractor seeking coverage].").[18]   Therefore, as it is in fatal conflict with
*Hardscape,* any reliance on the *Swinerton* decision must fail.

## VI.

## <u>THE OTHER BUSINESS RISK EXCLUSIONS ALSO NEGATE COVERAGE</u>

Further bolstering the CGL Policy's design to exclude coverage for business risks, the
Amerisure Policies contain exclusions for "recall of work," "damage to property," and "impaired
property." (Doc. 18-3, STIP 000131-32; Doc. 18-6, STIP 000351-52; Doc. 18-10, STIP 000538-
39; and Docs. 18-14 and 18-15, STIP 000772-73, at §§ 2.j., 2.m., and 2.n.) Each of these exclusions
independently applies to negate coverage for the business risk damages alleged in the Underlying
Lawsuit, as discussed below.

First, the "recall of work" exclusion negates coverage for "[d]amages claimed for any loss,
cost or expense incurred by [Ewing] . . . for the loss of use, withdrawal, recall, inspection, repair,

---

[17] Specifically, instead of properly focusing on the insured seeking coverage, the *Swinerton* court analyzed
the Exclusion and its exception from the standpoint of Cypress Industrial, one of Swinerton's subcontactors who was
not even seeking coverage (nor a party to the suit). *Swinerton*, 2010 WL 4919073 at * 8 ("First, in the absence of
Cypress Industrial's contract with Swinerton, Cypress Industrial would be liable to the University for Cypress
Industrial's work on the project for any liability it incurred relative to the alleged damages in the underlying suit.")
(emphasis added). Cypress Industrial was the named insured that purchased the Policy.

[18] The exceptions to the Contractual Liability Exclusion employ the term "the insured."  Under Texas law,
this term must be read to mean the actual insured seeking coverage, not the named insured who bought the policy.
*Commercial Standard Ins. Co. v. American Gen. Ins. Co.*, 455 S.W.2d 714, 720 (Tex. 1970) (holding that "the
insured" refers "only to the party seeking coverage under the policy" due to the Separation of Insured's provision);
*King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex. 2002) (the same); and *Centennial Ins. Co. v. Ryder Truck Rental,*
149 F.3d 378, 380 (5th Cir. 1998) (Miss.) (finding that similar exclusion using the term "the insured" referred to the
additional insured seeking coverage, not the named insured).

replacement, adjustment, removal or disposal of . . . 'your work' or 'impaired property' . . . if such . . . work . . . is withdrawn . . . from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it." (*Id.* at §2.n.)  Here, Tuloso-Midway withdrew the Ewing tennis courts from use by its students and seeks damages for a loss of use, repair, replacement, adjustment, and removal of the courts due to defects and inadequacies. (Docs. 18-18, 18-17, and 18-16.)  Therefore, the exclusion applies, and negates all coverage.

Next, the "damage to property" exclusion negates coverage for "property damage" to that particular part of real property  1) which must be restored, repaired or replaced because of Ewing's defective work;  2) on which Ewing or its contractors or subcontractors are performing operations, if the "property damage" arises out of those operations.  (*supra* at §2.j(5) & 2.j(6).) Both definitions are "directly applicable" to the tennis courts, which are the particular part of the school's property on which Ewing was performing operations, and which now allegedly must be restored, repaired and replaced because of Ewing's defective work.  *See David Lewis Builders*, 720 F. Supp. 2d at 790. The exclusion also negates coverage for "property damage" to property Ewing occupies while performing its work (*i.e.*, the tennis courts), including the damages Tuloso-Midway seeks for the repair, replacement, enhancement, restoration, and maintenance of the courts.  (*supra* at §2.j(1).)

Further, the Underlying Lawsuit alleges that Tuloso-Midway discovered the cracking *before* the courts were substantially completed, but the problem "continued after that date." (Doc. 18-16, STIP 000823.)  The Fifth Circuit recently affirmed  the application of these exact exclusions to claims involving foundation cracks that began occurring occurred before completion and continued afterwards. (*See* Ex. A, AME 0003, at ¶13.) ("several months after Plaintiffs moved in, the cracking worsened.").  Therefore, the j(5) and j(6) Exclusions negate all coverage.

Finally, the "impaired property" exclusion negates coverage for "property damage" to "impaired property" which arises out of work that is defective, inadequate, or is not in accordance with the specifications of a contract.  (*supra* at §2.m.)  Here, to the extent Ewing claims the Underlying Lawsuit seeks damages to any property other than the tennis courts which cannot be used or is less useful because of Ewing's allegedly defection construction, such damages are excluded.[19] (*See Id.*, and STIP 000139, 000359, 000546, 000780, at ¶8.)  The pleadings do not allege any damage to property which cannot be restored to use.  (Docs. 18-18, 18-17, and 18-16.)  Therefore, this exclusion negates coverage for any other property allegedly damaged by Ewing's work.

## VII.

### FOR THE SAME REASONS AS IT OWES NO DUTY TO DEFEND, AMERISURE ALSO OWES NO DUTY TO INDEMNIFY EWING

The Fifth Circuit's *Hardscape* decision also recognized that, in situations where the Contractual Liability Exclusion negates the duty to defend, the duty to *indemnify* is also precluded. This is due to the fact that the same reasons that negate Amerisure's duty to defend, likewise negate any possibility the insurer will ever have a duty to indemnify.  *See, Hardscape,* 578 F.3d at 270 (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 83-84 (Tex. 1997) ("[T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend).  As established above, there is no possibility that any facts will be developed in the Underlying Lawsuit would alter the fact that the Tuloso-Midway's claims sound only in contract, not tort. Therefore,

---

[19] Amerisure maintains that there is no damage to other property.

**AMERISURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE** - **Page 23**

Amerisure does not owe a duty to defend nor indemnify Ewing with regard to the Underlying Lawsuit.

## VIII.

## AS THERE IS NO COVERAGE, EWING'S INSURANCE CODE CLAIMS FAIL

Ewing also seeks a declaration that Amerisure has violated the Prompt Payment of Claims Act, Tex. Ins. Code Ann. § 542.060, with regard to the duty to defend. However, as Amerisure has demonstrated that it owes no coverage, this claim fails as a matter of law. *Mary Kay Holding Corp. v. Fed. Holding Co.*, 2007 WL 4179313 (N.D. Tex. 2007), *aff'd sub nom.*, 309 Fed. Appx. 843 (5th Cir. 2009) ("[I]f the Policy does not provide coverage for the claims asserted in the underlying lawsuit, the insurer is not liable [under the statute] and the plaintiff may not recover.") (citing *Progressive County Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 922 (Tex. 2005)).

WHEREFORE, PREMISES CONSIDERED, Defendant, Amerisure Insurance Company, respectfully requests that this Court grant Amerisure's Cross-Motion For Summary Judgment, deny Ewing's Motion For Partial Summary Judgment, declare that Amerisure does not owe a duty to defend nor indemnify Ewing from any claims arising out of the Underlying Lawsuit, and declare that Amerisure did not violate the Prompt Payment of Claims Act. In addition, Amerisure prays for such further relief to which it may be entitled.

Respectfully submitted,

**PRUESSNER & ALEXANDER**


*/s/ David M. Pruessner*
**DAVID M. PRUESSNER**
State Bar No. 16364500
S.D. No. 22475
**JES ALEXANDER**
State Bar No. 24040404
S.D. No. 839819
13155 Noel Road, Suite 1025
Dallas, Texas 75240
(972) 991-6700
(972) 991-6710 [Fax]
david@prulaw.com
jes@prulaw.com
**ATTORNEYS FOR DEFENDANT
AMERISURE INSURANCE COMPANY**


## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that a true and correct copy of Defendant Amerisure's Response and Cross-Motion For Summary Judgment has been sent via Filing Users through the Notice of Electronic Filing to all counsel of record and/or via facsimile on this 21st day of February 2011:

Lee H. Shidlofsky
Visser Shidlofsky LLP
Greystone Plaza
7200 N. Mopac Expwy., Suite 430
Austin, Texas 78731


*/s/ David M. Pruessner*
**DAVID M. PRUESSNER**