**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **EWING CONSTRUCTION CO., INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **vs.** | § | |
| | § | **2:10-cv-00256** |
| **AMERISURE INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT AMERISURE INSURANCE COMPANY'S**
**REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**DAVID M. PRUESSNER**
State Bar No. 16364500
S.D. No. 22475
**JES ALEXANDER**
State Bar No. 24040404
S.D. No. 839819

**PRUESSNER & ALEXANDER**
13155 Noel Road, Suite 1025
Dallas, Texas 75240
(972) 991-6700
(972) 991-6710 [Fax]
david@prulaw.com
jes@prulaw.com
**ATTORNEYS FOR DEFENDANT**
**AMERISURE INSURANCE COMPANY**

**TABLE OF CONTENTS**

                                                                        **Page**

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.      SUMMARY: THE CONTRACTUAL LIABILITY EXCLUSION
        NEGATES ALL COVERAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     EWING'S ATTEMPTS TO CLOUD THE ISSUES FAIL. . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    *Lamar Homes* Did Not Deal With The Contractual
              Liability Exclusion, And Thus, Cannot Be Relied
              Upon To Interpret The Exclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.    The Contractual Liability Exclusion Is Designed To
              Negate Coverage For The Insured's Own Faulty Work.. . . . . . . . . . . . . . . . . . 4

III.    THE CONTRACTUAL LIABILITY EXCLUSION NEGATES
        ALL COVERAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    Ewing's Attempt To Limit *Gilbert* To Its Facts
              Is Contradicted By Its Own Recent Statements. . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    The Texas Supreme Court Dismissed Ewing's
              "Assumption of Liability" Argument In *Gilbert*. . . . . . . . . . . . . . . . . . . . . . . 7

IV.     THE UNDERLYING LAWSUIT SOUNDS ONLY IN
        CONTRACT UNDER THE ECONOMIC LOSS DOCTRINE,
        TRIGGERING THE CONTRACTUAL LIABILITY EXCLUSION. . . . . . . . . . . . . . . . 12

        A.    Ewing Does Not Dispute That The Economic Loss
              Doctrine Applies To The Underlying Lawsuit, Which Only
              Alleges Damages To The Subject Matter Of The Contract. . . . . . . . . . . . . . . . 12

        B.    As Recognized By The Supreme Court Of Texas And
              The Fifth Circuit, The Contractual Liability Exclusion
              Incorporates The Economic Loss Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      EWING FAILS TO DISTINGUISH *HARDSCAPE*. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.    AN EXCEPTION TO THE YOUR WORK EXCLUSION DOES NOT
       RENDER THE CONTRACTUAL LIABILITY EXCLUSION AMBIGUOUS. . . . . . . . 20

VII.   THE J(5) AND J(6) EXCLUSIONS INDEPENDENTLY NEGATE
       COVERAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VIII.  NO DUTY TO DEFEND, NO DUTY TO INDEMNIFY. . . . . . . . . . . . . . . . . . . . . . . . 25

## INDEX OF AUTHORITIES

**Page**

*American Family Mut. Ins. Co. v. American Girl, Inc.*,
673 N.W.2d 65 (Wis. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bayou Steel Corp. v. Evanston Ins. Co.*,
354 Fed. Appx. 9 (5th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Betco Scaffolds Co., Inc. v. Houston United Casualty Insurance Co.*,
29 S.W.3d 341 (Tex.App.–Houston [14th Dist.[ 2000, no pet.). . . . . . . . . . . . . . . . . . . 12

*Century Sur. Co. v. Hardscape Const. Specialties Inc.*,
578 F.3d 262 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*David Lewis Builders, Inc. v. Mid-Continent Cas. Co.*,
720 F. Supp. 2d 781 (N.D. Tex. 2010), *aff'd*,
2011 WL 365279 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 9, 10, 24

*Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*,
197 F.3d 720 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ferrell v. W. Bend Mut. Ins. Co.*,
393 F.3d 786 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fiess v. State Farm Lloyds*,
202 S.W.3d 744 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gal-Tex Hotel Corp. v. Home Ins. Co.*,
46 F.3d 66 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*,
327 S.W.3d 118 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*,
197 S.W.3d 305 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hartford Casualty Co. v. Cruse,*
938 F.2d 601 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jim Walter Homes, Inc. v. Reed,*
711 S.W.2d 617 (Tex. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.,*
   396 N.W.2d 229 (Minn. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
   242 S.W.3d 1 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Lennar Corp. v. Great Am. Ins. Co.,*
   200 S.W.3d 651 (Tex.App.–Houston [14th Dist.] 2006, pet. denied),
   *abrogated on other grounds by Gilbert,*
   327 S.W.3d 188 (Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*National Union Fire Ins. Co. v. CBI Indus., Inc.,*
   907 S.W.2d 517 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Nationwide Mut. Ins. Co. v. CPB Intern., Inc.,*
   2007 WL 4198173 (M.D. Pa. 2007), *aff'd,*
   562 F.3d 591 (3rd Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ohio Cas. Ins. Co. v. Coopoer Mach. Corp.,*
   817 F. Supp. 45 (N.D. Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Sigma Marble & Granite-Houston, Inc. v. Amerisure Mut. Ins. Co.,*
   2010 WL 5464257 (S.D. Tex. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Silk v. Flat Top Const., Inc.,*
   192 W. Va. 522 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sw. Bell Tel. Co. v. DeLanney,*
   809 S.W.2d 493 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,*
   784 S.W.2d 692 (Tex.App.–Houston [14th Dist.] 1989, writ denied).. . . . . . . . 4, 5, 21, 22

*TGA Dev., Inc. v. Northern Ins. Co.,*
   62 F.3d 1089 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Tonicstar Ltd. v. Lovegreen Turbine Serv., Inc.,*
   535 F.3d 790 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tradin Organics USA, Inc. v. Maryland Cas. Co.,*
   325 Fed. Appx. 10 (2nd Cir. 2009), *cert. denied,*
   130 S. Ct. 744, 175 L. Ed. 2d 541 (U.S. 2009). . . . . . . . . . . . . . . . . . . . . . . . 21

*Travelers Ins. Co. v. Volentine*,
　　578 S.W.2d 501 (Tex.Civ.App.–Texarkana 1979, no pet.). . . . . . . . . . . . . . . . . . . . . . . . 21

*Trinity Universal Ins. Co. v. Cowan*,
　　945 S.W.2d 819 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*,
　　979 So.2d 871 (Fla. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United Nat. Ins. Co. v. Hydro Tank, Inc.*,
　　497 F.3d 445 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Utica Nat. Ins. Co. of Texas v. Am. Indem. Co.*,
　　131 S.W.3d 198 (Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Zurich Am. Ins. Co. v. Nokia, Inc.*,
　　268 S.W.3d 487 (Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

EWING CONSTRUCTION CO., INC.,        §
                                     §
        Plaintiff,                   §
                                     §
                                     §        CIVIL ACTION NO.
vs.                                  §
                                     §        2:10-cv-00256
AMERISURE INSURANCE COMPANY,         §
                                     §
        Defendant.                   §

DEFENDANT AMERISURE INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

        COMES NOW Defendant Amerisure Insurance Company ("Amerisure") and files this Reply

in support of its Cross-Motion For Summary Judgment [Doc. 20], and would show that the

Contractual Liability Exclusion and other Business Risk exclusions preclude Ewing's attempt to

mutate a liability policy into reimbursing Ewing for its bad work, as follows:

**I.**
**SUMMARY: THE CONTRACTUAL LIABILITY EXCLUSION**
**NEGATES ALL COVERAGE**

        Ewing does its best to distract the Court from the Fifth Circuit's decision in *Hardscape*[1] and

the clear import of the Supreme Court of Texas' decision in *Gilbert*.[2]  Both of these cases dealt with

the principal exclusion before this Court, the Contractual Liability Exclusion.[3]  *Gilbert* demonstrates

---

[1] *Century Sur. Co. v. Hardscape Const. Specialties Inc.,* 578 F.3d 262 (5th Cir. 2009).

[2] *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010).

[3] Without a shred of evidence, Ewing also contends that Amerisure "only specifically reserv[ed] its right to deny coverage because of lack of 'property damage,'" not the Contractual Liability Exclusion.  However, attached as Exhibit D-1, is a copy of a reservation of rights letter sent to Ewing where Amerisure specifically raises the Contractual Liability Exclusion as its first ground in denying coverage.  (Ex. D-1, AME 0093)

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 1

that the Contractual Liability Exclusion applies to direct breach of contract claims like those at issue here (not just indemnity agreements). And, *Hardscape* demonstrates that the economic loss doctrine can be applied to determine whether allegations of "negligence" are contractual in nature, triggering the Exclusion. Amerisure's position can be summarized, as follows:

> [Construction defects to the work itself] seemingly now are excluded by the contractually assumed liability exclusion [under *Gilbert*] because, at the end of the day, the economic loss rule applied by Texas courts bars tort claims when the damage is to the subject matter of the contract itself.

The preceding quote is from Ewing's own counsel when he attempted to convince the Supreme Court of Texas to rehear *Gilbert*, a plea that fell on deaf ears. (Ewing, as an *amici*, made a similar argument to the Supreme Court.)

With nowhere else to turn, Ewing relies extensively upon a case that did not involve the Contractual Liability Exclusion, *Lamar Homes.*[4] Next, Ewing wrongly contends that the Business Risk exclusions, such as the Contractual Liability Exclusion, are not designed to negate coverage for repair and replacement of the insured's work. This Court should look through this haze, and rely upon *Gilbert* and *Hardscape* to find that the Contractual Liability Exclusion negates all coverage.

## II.
## EWING'S ATTEMPTS TO CLOUD THE ISSUES FAIL

Before getting to the Contractual Liability Exclusion and the merits of *Hardscape* and *Gilbert,* it is necessary to deal with Ewing's repeated attempts to confuse the issues before this Court.

### A.    *Lamar Homes* Did Not Deal With The Contractual Liability Exclusion, And Thus, Cannot Be Relied Upon To Interpret The Exclusion

First, Ewing desperately attempts to convince this Court that "the instant case is more in line

---

[4] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1 (Tex. 2007).

with *Lamar Homes ...* than *Gilbert*." (Response, pg. 11, ¶ 2.)[5]  To that end, Ewing refers to *Lamar Homes* in 15 of the 25 pages of its Response.[6]  Based on this statistic alone, one might conclude that *Lamar Homes* actually dealt with the principal issue at hand, namely, whether the Contractual Liability Exclusion precludes coverage.

This same attempt to muddy the waters with *Lamar Homes* was rejected in *Gilbert*, where the Supreme Court admonished that the "contractual liability exclusion was not at issue in *Lamar Homes*." *Gilbert*, 327 S.W.3d at 132 (Tex. 2010); *Hardscape*, 578 F.3d at 266 n. 4 (5th Cir. 2009). It is easy to see why the Supreme Court found *Lamar Homes* unpersuasive in interpreting the Contractual Liability Exclusion.  Specifically, *Lamar Homes* principally involved the CGL policy's broad insuring agreement, which merely requires an "occurrence" and "property damage."  The insuring agreement is the initial and broadest part of the policy.  *Lamar Homes*, 242 S.W.3d at 14 ("the CGL's insuring agreement ... is quite broad").  However, regardless of whether the insuring agreement is met, the relevant exclusions may still negate coverage.

Furthermore, in placing far too much reliance on *Lamar Homes,* Ewing overlooks the fundamental principle in insurance law that "the role of precedent in insurance policy interpretation cases depends largely on whether the underlying facts and the policies at issue in the two decisions *are similar.*"[7]  Here, the language in the policy's insuring agreement is distinguishable from the

---

[5] Ewing's heavy reliance on *Lamar Homes* is likely due to the fact that its counsel represented the victorious insured, Lamar Homes, in that case.

[6] In stark contrast, Ewing devotes a mere three paragraphs to discussing the Fifth Circuit's recent *Hardscape* decision, which interpreted the Contractual Liability Exclusion at issue here.

[7] *See U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871(Fla. 2007) (relied upon in Ewing's Response, at pg. 4 fn. 12.) (emphasis added); *and see, Bayou Steel Corp. v. Evanston Ins. Co.*, 354 Fed. Appx. 9, 12 (5th Cir. 2009) ("Although the facts in [a prior case] are similar to those in this case, the exclusion at issue in [the prior case] is very different from the exclusion in Evanston's policy"); *See Utica Nat. Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY** – **PAGE 3**

language in the Contractual Liability Exclusion *Lamar Homes*, as noted by the Fifth Circuit. *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 266 (5th Cir. 2009).[8]

**B.      The Contractual Liability Exclusion Is Designed
          To Negate Coverage For the Insured's Own Faulty Work**

Next, Ewing's Response takes issue with a block quote that Amerisure cited in its Cross-Motion, which explained that "the purpose of liability insurance coverage for a builder is to protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that  product."[9]  In furtherance of this "repair and replace" view of CGL insurance, Ewing contends that this same quote was cited in the Supreme Court's *Lamar Homes* decision, and "soundly rejected."  (Ewing's Response, pg. 3.)

However, in a case decided less than a year **after** *Lamar Homes,* the Supreme Court quoted virtually identical language, as follows:

> Pursuant to this understanding, certain exclusions have been included within the standard commercial general liability policy for the express purpose of excluding coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself.  These "business risk" exclusions, as they are commonly called, are intended to provide coverage for tort liability, not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.

---

198, 203 (Tex. 2004) ("To us, the different wording in these exclusions is significant.").

[8] Ewing also cites to a number of cases that Ewing contends demonstrates coverage is owed for construction defects.  (Ex. F)  However, these decisions suffer the same flaws as *Lamar Homes*, as the Contractual Liability Exclusion was not at issue in these cases.

[9] (Amerisure's Cross Motion, at pg. 5).  This quote is from a 2010 Northern District of Texas decision that was recently affirmed by the Fifth Circuit.  *David Lewis Builders, Inc. v. Mid-Continent Cas. Co.,* 720 F. Supp. 2d 781,785 (N.D. Tex. 2010), *aff'd*, 2011 WL 365279 (5th Cir. 2011) (citing *T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,* 784 S.W.2d 692, 694-95 (Tex.App.–Houston [14th Dist.] 1989, writ denied); and *Hartford Cas. Co. v. Cruse,* 938 F.2d 601, 604 (5th Cir. 1991)).

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 4

*Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 500 (Tex. 2008) (emphasis added).  The Court in *Nokia* even cites the same Houston Court of Appeals decision underpinning the quote cited by Amerisure.  *Compare Id.* (citing *T.C. Bateson*, 784 S.W.2d at 694-95 ("The purpose of comprehensive liability insurance coverage is to provide protection to the insured for personal injury or for property damage caused by the completed product but not for the replacement and repair of that product.")); with fn. 9 *supra*.  Perhaps, this is why the Northern District of Texas in a case, which was recently affirmed by the Fifth Circuit, employed this same quote in its analysis.  *David Lewis Builders*, 720 F. Supp. 2d at 785.

Furthermore, contrary to Ewing's assertions, *Lamar Homes* did not reject the well-established rule that a CGL Policy is not for the repair and replacement of the insured's work.  The *Nokia* Court saw no inconsistency between its broad statement and *Lamar Homes* – it even cited *Lamar Homes* in its opinion.  *Nokia*, 268 S.W.3d at 495.  Indeed, *Lamar Homes* recognized that "[m]ore often, however, faulty workmanship will be excluded from coverage by specific exclusions because that is the CGL's structure." *Lamar Homes*, 242 S.W.3d at 10.  And, consistent with the block quote in *Nokia*, Amerisure relies upon specific business risk exclusions, such as the Contractual Liability Exclusion, which preclude coverage for the repair and replacement of Ewing's faulty work.  Therefore, Ewing's reliance on *Lamar Homes* in this case can simply be disregarded.

### III.
### THE CONTRACTUAL LIABILITY EXCLUSION NEGATES ALL COVERAGE

Returning to the issues at hand, Amerisure's Cross-Motion demonstrated that, under *Gilbert,* the Contractual Liability Exclusion negated coverage from Ewing's assumption of liability based on its contract with Tuloso-Midway to construct tennis courts.  Ewing attempts to sidestep the effect

of *Gilbert* by arguing that it should be limited to its facts.

### A.   Ewing's Attempt To Limit *Gilbert* To Its Facts Is Contradicted By Its Own Recent Statements

In its Response, Ewing tries to distinguish the Texas Supreme Court's holding in *Gilbert* that the Contractual Liability Exclusion applies to general breach of contract claims, by arguing "the facts of *Gilbert* were unique." (Ewing's Response, pg. 9.)  However, Ewing and its counsel told quite a different story to the Supreme Court just a few months ago, while the case was on rehearing.  In Ewing's amicus brief in support of Gilbert's motion for rehearing, Ewing represented to the Supreme Court that "[t]he facts presented to the Court in this case represent a *constantly occurring scenario* for Texas insureds, particularly those engaged in construction." (Ex. C, General Contractors' *Amicus* Brief, pg. 5) (emphasis added).[10]  Far from viewing the Court's ruling as being limited to its facts, Ewing took the position that "the Court's ruling paints with a broad brush and would appear to eliminate coverage for *all direct contractual duties involving an obligation to repair property damage arising out of defective workmanship*." (*Id.*, pg. 7) (emphasis added.)

Ewing's counsel (speaking on behalf of Gilbert) agreed with Ewing's assessment that the *Gilbert* holding extends far beyond the factual situation presented there.  (*See* Ex. A & B, Gilbert's Motion For Rehearing & Reply.)[11]  Ewing's counsel ridiculed the notion that "the holding of the case

---

[10] Ewing has been an active member of the Associate General Contractors of America since 1970.  (Ex. H)  Ewing's founder, Wm. B. Ewing, served as the president of the Texas Building Branch of the organization, and also served as one of the organization's national directors.  (*Id.*)  Amerisure requests that this Court take judicial notice of this fact, which is stated on Ewing's own website at www.ewingcc.com/Company_History.cfm.

[11] Amerisure sympathizes with counsel's ethical duty to present their "advocate" view of *Gilbert* to this Court despite their prior statements.  Nonetheless, Amerisure feels that counsel's statements on behalf of Gilbert are appropriate for consideration by this Court, since Gilbert and Ewing's interests were closely aligned in that litigation.  This close alliance is demonstrated by the fact that Gilbert and its counsel expressly agreed with and incorporated all arguments raised in Ewing's amicus brief (Ex. B, pg. 1), by Gilbert and Ewing's essentially identical positions on rehearing, and by the obvious fact that both parties are represented by the same counsel with respect to insurance

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 6

is limited to its facts," saying such a view "defies reality." (Ex. B, pgs. 1-2.) According to counsel's own reading, "the Court's opinion eliminates coverage ***any time*** *the only remaining viable claim against the insured is based on breach of contract.*"[12] (Ex. A, pg. 6) (emphasis added). Therefore, Ewing's suggestion that *Gilbert* is somehow limited to its "unique" facts is disclaimed by Ewing's own recent statements, and those of its counsel.

### B.   The Texas Supreme Court Dismissed Ewing's "Assumption Of Liability" Argument In *Gilbert*

Next, Ewing contends that the Texas Supreme Court "seemingly dismissed" the proposition that "merely entering into a contract somehow constitutes an 'assumption'" in its *Gilbert* decision. (Ewing's Response, pg. 10.)[13] However, under its counsel's own reading of *Gilbert*, which was

---

coverage litigation. Moreover, Ewing's counsel has often employed a similar approach against insurers, including relying on prior amicus briefs filed by an entity associated with Underwriters to rebut its arguments during the *Gilbert* case. (Ex. B, pg. 2 n.3); (See also text above footnote, attacking Underwriters' position based on prior statements made by unaffiliated attorneys not involved in the litigation who "represent *insurers*"). Amerisure requests that this Court take judicial notice of these briefs, which are attached as Exhibits A-C, and are also available on the Supreme Court's website at www.supreme.courts.state.tx.us/ebriefs/files/20080246.htm

[12] Confusingly, Ewing's counsel now advises this Court that "the viability of the claims against the insured is irrelevant." (Ewing's Response, pg. 11). Even assuming the latter view is correct with respect to the duty to defend, Amerisure does not argue that the claims alleged in the Underlying Lawsuit are not viable. Amerisure argues that they are not tort claims, despite their labels. (A point Ewing does not seriously dispute.)

As explained in Amerisure's Cross Motion, a duty to defend may be owed even when claims are not viable, as was the case in *Gilbert*, so long as a potential for covered liability exists. (Amersure's Cross Motion, pgs. 18-19.) However, an insurer owes no duty to defend claims that sound only in contract, because even if such claims ultimately succeed, they will still be excluded from coverage by the Contractual Liability Exclusion and other business risk exclusions. *Century Sur. Co. v. Hardscape Constr. Specialities Inc.*, 578 F.3d 262, 266 (5th Cir. 2009) (Tex.) (applying economic loss doctrine to negate duty to defend); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 500 (Tex. 2008) (applying economic loss doctrine to negate duty to defend). As such, there is no potential for covered liability in economic loss doctrine cases like the Underlying Lawsuit, where no tort claims exist. *Id.*

[13] Ewing faults Amerisure for allegedly "not point[ing] to any specific assumption of liability" by Ewing in a contract. Nonsense. Amerisure's fact section demonstrated that the *only* liability faced by Ewing in the Underlying Lawsuit is liability it assumed in its contract with Tuloso-Midway – a point which Ewing now concedes. (Amerisure's Cross Motion, pgs. 2-4, at §II; *see* Ewing's Response, pg. 2, at §II.) Amerisure showed that Ewing entered into a contract, and that the Underlying Lawsuit sought to hold Ewing liable for allegedly failing to comply with such contract. (*Id.*) Nothing more was required to show that the Underlying Lawsuit seeks damages "by reason of the assumption of liability in a contract," thus triggering the Contractual Liability Exclusion.

relayed to the Supreme Court on rehearing, "the [*Gilbert*] Court appears to have concluded that *every contract* entails the assumption of liability." (Ex. A, pg. 6) (emphasis added)[14]  This new approach is simply an attempt to limit the *Gilbert* holding to its facts.[15]

However, to truly appreciate the fallacy of Ewing's "assumption of liability" argument, it is necessary to understand the historical context of the Texas Supreme Court's holding in *Gilbert*. There, the Court examined whether the Contractual Liability Exclusion's language "by reason of assumption of liability in a contract" applied to all breach of contract cases, or whether it only "applies to a limited category of cases in which the insured assumes the liability of another, such as an indemnification or hold-harmless agreement." *Gilbert*, 327 S.W.3d at 129.  At the time, the Fifth Circuit and other Texas courts had often followed the latter interpretation, holding that the language only applied to indemnification and hold-harmless agreements.[16]

Due to these adverse holdings, insurers became hesitant to rely upon the Contractual Liability Exclusion in cases that did not involve indemnification agreements.[17]  This probably explains why

[14] Interestingly, Ewing's counsel highlights the same quoted portion of the *Gilbert* opinion to support both of its contradictory interpretations. (*Cf.* Ewing's Response, pg. 9 *with* Ex. A, pg. 6.)  However, the quoted analysis is only necessary in cases where the economic loss doctrine does not apply and the insured owes bona fide *tort* duties to an injured party with respect to the damages sought, as was the case in *Gilbert*.  In contrast, the present case falls easily within the economic loss doctrine, and the damages alleged in the Underlying Lawsuit sound *only* in contract.

[15] Apparently unsure of its position, Ewing quickly points out that "even if merely entering into a contract somehow constitutes an 'assumption'", which it clearly does, the exceptions to the Exclusion may still apply. (Ewing's Response, pg. 10.)

[16] *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 726 (5th Cir. 1999), *holding disapproved* in *Gilbert*, 327 S.W.3d at 130; *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 693 (Tex.App.–Houston [14th Dist.] 2006, pet. denied), *overruled* in *Gilbert*, 327 S.W.3d at 124, 130.

[17] The practical difficulty with such a position was best illustrated in the recent case of *David Lewis Builders, Inc. v. Mid-Continent Cas. Co.,* 720 F. Supp. 2d 781,788 (N.D. Tex. 2010) (McBryde, J.), *aff'd*, 10-10432, 2011 WL 365279 (5th Cir.  2011).  There, the insurer forcefully argued that the contractual liability exclusion negated all coverage for a construction defect suit brought against a general contractor for a bad foundation, facts strikingly similar to the present case.  Judge McBryde was convinced the exclusion should apply.  He even boldly declared his suspicion that "the true intent of the insurance company might well have been ignored" by the decisions

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY** – PAGE 8

the Exclusion was not raised in *Lamar Homes*.

Then came *Gilbert*.  The Supreme Court flatly rejected Gilbert's contention that the phrase "by reason of assumption of liability in a contract" refers to anything other than general breach of contract claims.  *Id.* at 127-30.  Instead, the Court held that the Contractual Liability Exclusion applies "**without qualification** to liability assumed by contract," subject to two narrow exceptions.  *Id.* at 129 (emphasis added).  To remove any doubt about the reach of its holding, the Court cited a string of precedents from other jurisdictions which, according to the Court, interpret the Exclusion **"as we do."**  *Id.* at 130 n. 9 (emphasis added).  For each case cited in Footnote 9, the Court added the following specific annotations explaining *why* it agreed with the holding:

- "[A]ny claim that is dependent on the existence of an underlying contract is not covered";

- "[The Exclusion] is simply further clarification in the policy that contract-based claims are not covered";

- "[T]he plain meaning of the policy excludes a breach of contract claim from coverage";

- "[The] exclusion . . . plainly excluded coverage for contractual claims".

*Id.*  The *Gilbert* Court's message was loud and clear.  General breach of contract claims – like those at issue here – are within the scope of the exclusion.

Ewing and its counsel both understood this message, as evidenced in their briefs filed with the Texas Supreme Court a few months ago.  In Gilbert's Motion for Rehearing, Ewing's counsel specifically pointed to Footnote 9 as evidence of the breadth of the Court's holding, and stated "this

---

holding that the exclusion was limited to indemnification and hold-harmless agreements.  *David Lewis Builders,* 720 F. Supp. 2d at 788.  Nonetheless, Judge McBryde observed that he was bound by precedent existing at the time which prevented him from applying the exclusion to general breach of contract claims.  *Id.*  As his opinion demonstrates, urging the exclusion in federal court prior to *Gilbert* was futile in cases like this one.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 9**

Court *agreed* with the handful of cases . . . that hold that the contractually assumed liability exclusion **is a breach contract exclusion**." (Ex. A, pgs. 4-5) (emphasis added).[18] Now minimizing the importance of Footnote 9, Ewing scrambles to "distinguish" these cases based on their facts. (Ewing's Response, pgs. 11-12.) But, the Supreme Court cited these cases for their general holdings regarding the scope of the exclusion, not their factual idiosyncracies.[19]

Notably however, Ewing offers *no* factual distinguishment of the Footnote 9 case Amerisure chiefly relies upon, *TGA Dev., Inc. v. Northern Ins. Co.*, 62 F.3d 1089, 1091-92 (8th Cir. 1995). (Amerisure's Cross Motion, pg. 10.) Ewing appears to concede – as it must – that the *TGA* case, which was cited by the Texas Supreme Court as applying the Contractual Liability Exclusion **"as we do,"** found the Exclusion applied to negate coverage for claims which are on all fours with those brought in the Underlying Lawsuit. As set forth in Amerisure's Cross Motion, the *TGA* court held the Exclusion applied to negate any duty for an insurer to defend or indemnify a similar construction defect lawsuit where a general contractor/insured (like Ewing here) was being sued for the repair and replacement of its bad work, as follows:

> We think that the language plainly excludes coverage for contractual claims made for [the insured's] failure to provide [the owner] with a condominium unit free from defects.

*Id.* at 1091-92; *See Gilbert*, 327 S.W.3d at 130 n.9 (citing exact same portion of *TGA* opinion).

---

[18] Ewing's counsel now seeks to convince this Court that *Gilbert* reached just the opposite conclusion – that the Contractual Liability Exclusion is *not* a breach of contract exclusion. (Ewing's Response, pg. 9.)

[19] Further, Ewing's attempted distinguishments fail in their own right. With regard to one of the cases, Ewing observes that it was not necessary for the court in that case to apply the economic loss doctrine. But, that misses the point entirely. The Supreme Court cited the cases for the *scope* of the exclusion, not for the application of the economic loss doctrine when deciding whether the exclusion ultimately bars coverage. (The Court cited its own prior decision in *DeLanney* for the latter point. *Gilbert*, 327 S.W.3d at 134.) Perhaps realizing the futility of further efforts, Ewing does not even try to distinguish the remaining cases.

Significantly, Ewing makes no argument that the *Gilbert* Court's adoption of this specific portion of the *TGA* opinion should not control this Court's *Erie* guess in this case.

Instead, Ewing relies entirely on the notion that *TGA* was not followed by a subsequent Eighth Circuit Court of Appeals decision rendered ten years later, *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 795 (8th Cir. 2005), and thus, the case is "out of date." (Ewing's Response, pg. 12.) This contention cannot withstand even the slightest scrutiny. *TGA* was decided under **Minnesota law** while *Ferrell* was decided under **Wisconsin law**. *TGA*, 62 F.3d at 1091; *Ferrell*, 393 F.3d at 794.[20] Ewing's attack on *TGA* compares an apple to an orange. More recently, the Eighth Circuit has reaffirmed that, "*under Minnesota law* . . . loss of use of property resulting from defective work falls outside the coverage of [general liability] policies." *Tonicstar Ltd. v. Lovegreen Turbine Serv.*, *Inc.*, 535 F.3d 790, 794 (8th Cir. 2008) (emphasis added) (citing *TGA*, 62 F.3d at 1091). Therefore, Ewing fails to offer any valid reason why the *TGA* holding, as adopted by the Texas Supreme Court, should not be applied to the facts of this case.

Finally, Ewing fails to advance a single interpretation of when the Contractual Liability Exclusion actually applies in this context. Instead, Ewing apparently urges this Court to strike the

---

[20] This distinction makes all the difference. In *TGA*, the Eighth Circuit predicted that the Minnesota Supreme Court would apply the contractual liability exclusion to bar coverage for general breach of contract claims for construction defects. *TGA*, 62 F.3d at 1091 (citing *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 235 (Minn. 1986) ("the CGL policy does not provide coverage for claims of defective materials and workmanship giving rise to a claim for damage to the property itself which is the subject matter of the construction project.")).

Meanwhile, the Wisconsin Supreme Court has *refused* to apply the contractual liability exclusion to general breach of contract claims for construction defects, and instead holds the exclusion "applie[s] only where the insured ha[s] contractually assumed a third party's liability, as in an indemnification or hold-harmless agreement." *Ferrell*, 393 F.3d at 795 (citing *American Family Mut. Ins. Co. v. American Girl, Inc.*, 673 N.W.2d 65, 79-81 (Wis. 2004)).

In *Gilbert*, the Texas Supreme Court adopted the Minnesota approach (as predicted by the Eighth Circuit) and rejected the Wisconsin approach. *See Gilbert*, 327 S.W.3d at 130 n. 8 & n. 9 (disagreeing with *American Girl* and *Ferrell*, and agreeing with *TGA*). Therefore, Ewing's contention that *TGA* was not followed in a case which the Texas Supreme Court disagreed with (*Ferrell*), and which applied a state's law that is inconsistent with Texas law on this issue (Wisconsin), certainly does not make the *TGA* decision any less controlling on this Court's *Erie* guess.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY** – PAGE 11

Exclusion from the Policy when contractors are involved.  Of course, striking exclusions is an untenable position under Texas law.[21]  For these reasons, Ewing's argument that the Underlying Lawsuit is not based on contractually assumed liability must be rejected.

**IV.**
**THE UNDERLYING LAWSUIT SOUNDS ONLY IN CONTRACT**
**UNDER THE ECONOMIC LOSS DOCTRINE,**
**TRIGGERING THE CONTRACTUAL LIABILITY EXCLUSION**

Next, it is necessary to turn to the second issue in the case: whether the exception to the Contractual Liability Exclusion restores coverage if there is a claim that sounds in tort.  In Amerisure's Cross-Motion, it demonstrated that under the Fifth Circuit's *Hardscape* precedent, the economic loss doctrine can be applied to claims like those in the Underlying Lawsuit to demonstrate that the claims sound in contract, not tort.  Thus, the exception does not restore coverage.  Ewing concedes that the Underlying Lawsuit only sounds in contract, but argues that the economic loss doctrine should not be used in insurance coverage disputes.

A.      **Ewing Does Not Dispute That The Economic Loss Doctrine**
**Applies To The Underlying Lawsuit, Which Only Alleges**
**Damages To The Subject Matter Of The Contract**

Significantly, Ewing concedes that the damages alleged in the Underlying Lawsuit are confined to the subject matter of the contract between Ewing and Tuloso-Midway.[22]  Of course, this concession comes shortly after Amerisure soundly demonstrated this point in its Cross Motion.

---

[21] *See Betco Scaffolds Co., Inc. v. Houston United Casualty Insurance Co.*, 29 S.W.3d 341, 347 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (*en banc*) ("Because [the insured's] interpretation is fundamentally at odds with both the plain meaning and rationale of the inventory exclusion provision, it is not only not a reasonable interpretation of it, but is instead an ***obliteration*** of it which produces precisely the opposite of the intended effect.") (emphasis added.).

[22] Ewing agrees that all damages alleged are sought "*pursuant* to a contract."  (Ewing's Response, pg. 2.)

(Amerisure's Cross Motion, pgs. 2-4, at §II; and pgs. 15-17, at §V-D.)  Ewing has no answer.

Ewing's inability to identify *any* alleged damages which are outside the subject matter of the contract further confirms that the Underlying Lawsuit sounds *only* in contract.[23]  Here, based on the allegations within the eight corners of the Underlying Lawsuit, Ewing faces a potential of contractual liability, but <u>no potential</u> of *tort liability*.  That is undisputed.

As a consequence, Ewing cannot invoke the exception to the Contractual Liability Exclusion, as it has not met its burden of showing that the Underlying Lawsuit "*properly* alleges a tort cause of action against [Ewing]."  *Hardscape*, 578 F.3d at 266 ("the Hillwood petition triggers the exclusion's exemption [for liability in the absence of contract] **only if** it *properly* alleges a tort cause of action against Hardscape") (emphasis added).  Ewing's failure to make such a showing is fatal, as it bears the burden of bringing its claims within such exception.  *Id.* at 265.

### B.        As Recognized By The Supreme Court Of Texas And The Fifth Circuit, The Contractual Liability Exclusion Incorporates The Economic Loss Doctrine

To avoid the fact that it failed to meet its burden to show that the exception restored coverage, Ewing and its counsel again take a different approach than they did just months ago in front of the Supreme Court of Texas on the *Gilbert* case.  There, in arguing for a rehearing on behalf of Gilbert, Ewing's counsel contended that, under *Gilbert,* "those *same* claims [at issue in *Lamar Homes*] seemingly now are excluded by the contractually assumed liability exclusion because, at the end of the day, **the economic loss rule** applied by Texas courts bars tort claims when the damage

---

[23] *See Hardscape*, 578 F.3d at 269 ("[T]hese allegations are easily classified as giving rise to contract claims . . . because the damages occurred only to the subject matter of the Hillwood-Hardscape contract.")

is to the subject matter of the contract itself." (Motion For Rehearing, pg. 11) (emphasis added.)[24]

What case did counsel cite for this proposition? The Fifth Circuit's *Hardscape* decision. *Id*. n. 32.

Nonetheless, Ewing now argues that the economic loss doctrine some how cannot be applied in the duty to defend context.[25] In doing so, Ewing ignores Amerisure's previous briefing on this issue. Ewing fails to address the fact that the Fifth Circuit applied the economic loss doctrine to the Contractual Liability Exclusion in the **duty to defend** context, as painstakingly laid out in Amerisure's Cross-Motion. *Hardscape*, 578 F.3d at 270 (applying economic loss rule, and finding no duty to defend construction defect claims due to the Contractual Liability Exclusion). Ewing also ignores the fact that the Supreme Court of Texas has joined the brigade in finding that economic loss doctrine can be applied when interpreted in a similar Business Risk Exclusion in the duty to defend context. *Nokia*, 268 S.W.3d at 500 (Tex. 2008). These cases were cited by Amerisure in its Cross-Motion For Summary Judgment on this exact ground, but Ewing fails to even address them in this regard. (Amerisure's Cross-Motion, pg. 18, ¶ 1.) Thus, the Fifth Circuit and the Supreme Court

---

[24] In Gilbert's Reply brief on rehearing, Ewing's counsel expounded on his recognition that the economic loss doctrine was applicable to the Exclusion as interpreted by the Supreme Court in *Gilbert*. ("[I]f the damage was to the insurers's own work, the economic loss rule would eliminate the 'related tort claims' and, thus, would place the insured in the situation faced by Gilbert whereby the only viable claim sounded in contract.") (Ex. B, pg. 4.) Indeed, the General Contractor's *Amicus* Brief on Rehearing recognized that the economic loss doctrine applied in combination with the Contractual Liability Exclusion under the *Gilbert* decision. ("While not all claims invoking the economic loss rule are within the coverage of a CGL policy, those that involve property damage and those that involve an 'occurrence' of 'property damage' certainly are, and the contractual liability exclusion cannot be so broadly applied as to deny coverage for those claims ...") (Ex. C, pgs. 13-14.)

[25] Ewing refuses to come to grips with the fact that these exclusions can negate a duty to defend even if the insured demonstrates claims that come within the broad insuring agreement under *Lamar Homes*. Ewing's approach in this case is, "[s]imply put, ... an insurer is obligated to defend its insured against claims for 'damages because of ... 'property damage' caused by an 'occurrence'." (Ewing's Response, pg. 12, ¶ 1.) Ewing's "simple" approach is akin to stripping a defendant of all of its affirmative defenses, and allowing the plaintiff to prevail so long as it can meet its initial burden. However, as recognized by the Texas Supreme Court in *Nokia* and *Lamar Homes* (not to mention every other court in Texas), an insurer can negate the duty to defend via an exclusion even if the insured has come within the insuring agreement. Ewing's refusal to accept this basic proposition that the duty to defend can be negated by an exclusion is the fatal flaw underpinning Ewing's entire Response.

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 14

have no problem in applying the economic loss doctrine in the duty to defend context to exclusions.[26]

Ewing's approach also ignores the many other Texas cases applying the economic loss doctrine to

insurance coverage disputes, and in other contexts based *solely on the pleadings*.[27] The same

approach required with determining an insurer's duty to defend.[28]

Further, Ewing once again returns to the inapposite *Lamar Homes,* a case decided **before**

both *Nokia* and *Hardscape* (and cited in each). Ewing contends that *Lamar Homes* stands for the

proposition that the economic loss doctrine does not apply to insurance coverage disputes. However,

the Fifth Circuit and the Texas Supreme Court do not agree. Neither Court found that *Lamar Homes*

precluded applying the economic loss doctrine in the duty to defend. This is because, as the Court

in *Lamar Homes* carefully explained, its holding regarding the economic loss doctrine was based on

the fact that "the **insuring agreement** does not mention torts, contracts, or economic losses; nor do

these terms appear in the definitions of '**property damage**' or '**occurrence**.'" *Lamar Homes, Inc.*,

---

[26] Ewing argues that "practically speaking, the negligence claims in the underlying lawsuit in *Gilbert* were not potentially viable either, because of governmental immunity. Nevertheless, the insurer in *Gilbert* defended the lawsuit . . . [.]" Again, Ewing misses the point. It is the character of the claims, not their viability, that triggers the Contractual Liability Exclusion. *See Hardscape*, 578 F.3d at 267-68.

[27] In a flustered attempt to distinguish the cases cited in Footnote 16 of Amerisure's Cross-Motion, Ewing ignores several cases which applied the economic loss doctrine to the duty to defend, including a case cited by the Texas Supreme Court in *Nokia* for the proposition that the economic loss doctrine *can* be applied when determining whether business risk exclusions negate an insurer's duty to defend. *T.C Bateson*, 784 S.W.2d at 694-95 (cited in *Nokia*, 268 S.W.3d at 500). Also, Ewing fails to provide any reason why the other cases cited, which apply the economic loss doctrine to pleadings, should not be instructive on this issue.

[28] Ewing also argues that this Court cannot apply the economic loss doctrine in the duty to defend because it would somehow constitute an advisory opinion. (Ewing's Response, pgs. 14, 16). Ewing cites no case in support of this advisory opinion theory. Not to sound like a broken record, but the Supreme Court in *Nokia* and the Fifth Circuit in *Hardscape* had no difficulty in rendering what Ewing considers to be an advisory opinion.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY** – PAGE 15

242 S.W.3d at 13 (emphasis added).[29]

In stark contrast, the Contractual Liability Exclusion and its exceptions expressly incorporate the distinction between tort and contract, as both terms appear in the Exclusion and its definitions.[30] Thus, Amerisure properly relies upon the economic loss doctrine in applying the Contractual Liability Exclusion, just as the Fifth Circuit did in *Hardscape*. Once again, Ewing's appeal to *Lamar Homes* falls flat because comparing the insuring agreement to the Contractual Liability Exclusion is like comparing apples to oranges.[31]

Next – and again disregarding the *Nokia* and *Hardscape* decisions – Ewing also ignores Amerisure's briefing when it contends that *Gilbert* somehow supports Ewing's notion that the Contractual Liability Exclusion does not apply in the duty to defend context. (Ewing's Response, pg. 10.) Nor does Ewing substantively respond to Amerisure's arguments explaining the purpose of the Supreme Court's duty to defend caveat in *Gilbert*. (Amerisure's Cross-Motion, pgs. 17-20)

---

[29] The Fifth Circuit expressly recognized that *Lamar Homes's* discussion of the contract/tort distinction was *limited* to the insuring agreement, as follows:

> *Lamar Homes's* discussion of coverage under the "occurrence" term addressed no such tort/contract-based exclusion. There, the insurer attempted to employ a contract-tort distinction to advance its no-coverage argument, but only as an implied element of the definition of "occurrence." **Lamar Homes faced no [conractual liability] exclusion similar to Century's.**

*Hardscape,* 578 F.3d at 270 n.4 (emphasis added, citations omitted).

[30] Ewing is correct that the Exclusion does not preclude coverage for all breach of contract claims. As Amerisure has previously explained, the Exclusion negates coverage for liability which is *dependent* on a contract. (Amerisure's Cross Motion, pgs. 8-9.) Therefore, the tort/contract distinction requires an examination of the *true* basis for the insured's liability, which in this case is accomplished via the economic loss doctrine. *See Hardscape*, 578 F.3d at 267-70. Other cases may be different, but such facts are not before this Court.

[31] Ewing's Response also points to the "insuring agreement" case of *Sigma Marble & Granite-Houston, Inc. v. Amerisure Mut. Ins. Co.*, 2010 WL 5464257, at *9 (S.D. Tex. 2010) ("This court finds the *Lamar Homes, Inc.* case to leave no doubt that the "proper inquiry is whether an 'occurrence' has caused 'property damage' " as those terms are defined within the policy and not the nature of the asserted damages [via the application of the economic loss rule]."). Like *Lamar Homes, Sigma Marble's* discussion of the economic loss doctrine was limited to the policy's terms for "property damage" and "occurrence." *Id.* Like *Lamar Homes,* the court did not address nor interpret the Contractual Liability Exclusion. Thus, it has no bearing on the present case.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 16**

Further, Ewing argues that Amerisure "warps" the Supreme Court's language in *Gilbert* by noting that the Supreme Court of Texas cited to an economic loss doctrine case in its discussion of the Contractual Liability Exclusion. (Ewing's Response, pg. 14.)  Specifically, Amerisure pointed out that the Court in *Gilbert* cited to its leading  economic doctrine loss case, *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494-95 (Tex. 1991).   *Gilbert*, 327 S.W.3d at 134.  *DeLanney* established the contours of the economic loss doctrine: when there is damage to only the work called for in the contract itself, the loss sounds in contract; when there is damage to other property outside of the contract, that portion of the loss outside of the contract sounds in tort.[32]  Why would the Supreme Court cite to the leading economic loss doctrine case when interpreting the Contractual Liability Exclusion if the economic loss doctrine had no application to the Exclusion, as Ewing *now* contends?  Indeed, Ewing's counsel even cited to the *DeLanney* decision when he argued that under *Gilbert,* the economic loss doctrine *did* apply to the Contractual Liability Exclusion.  (Ex. B, pg. 4, n 13.)

This implicit recognition by the Supreme Court in *Gilbert* that the economic loss doctrine applies in the context of the Contractual Liability Exclusion in certain cases is further evidenced by the cases from other jurisdictions that the Court stated interpreted the Exclusion "as we do." *Gilbert*, 327 S.W.3d at 130 n.9; Amerisure's MSJ, pgs. 9-10.  In particular, two of these cases expressly applied the economic loss doctrine to the Contractual Liability Exclusion in the duty to defend

---

[32] As noted, Ewing does not contest that the only damages were to the subject matter of the contract itself. As a result, under the contours set forth in *DeLanney,* the Underlying Lawsuit only asserts contractual claims.

context.[33] Thus, it is hardly a leap to suggest, as Amerisure does, that the Supreme Court would apply the economic loss doctrine to the Contractual Liability Exclusion, as the Fifth Circuit has previously predicted.

Therefore, on the strength of the binding precedents of *Gilbert, Hardscape,* and *Nokia,* this Court's job is easy. Amerisure has demonstrated that the Contractual Liability Exclusion negates coverage for breach of contract claims. (See Section III, *supra*.) Amerisure has also demonstrated that the economic loss doctrine applies to the Exclusion in the duty to defend context to determine whether the claims in the Underlying Lawsuit sound in contract or tort. Since Ewing does not contest that, under the economic loss doctrine, the claims in the Underlying Lawsuit sound only in contract, this Court should find that the Contractual Liability Exclusion negates all coverage.

## V.
## <u>EWING FAILS TO DISTINGUISH *HARDSCAPE*</u>

With nowhere to turn, Ewing attempts to distinguish the holding in *Hardscape* from the present case. Ewing contends that the Fifth Circuit's decision was driven by the presence of another exception to the Contractual Liability Exclusion not at issue here, the "insured contract" exception.[34] Ewing contends that the Fifth Circuit's "focus on the difference between common law tort and contract causes of action in Texas" was entirely driven by its focus on the "insured contract"

---

[33] *Nationwide Mut. Ins. Co. v. CPB Intern., Inc.*, 2007 WL 4198173 (M.D. Pa. 2007), *aff'd,* 562 F.3d 591 (3rd Cir. 2009) ("As the above discussion of tort and contract claims makes clear [with regard to the economic loss doctrine], this language [in the contractual liability exclusion] means that the policy the does cover tort-based claims. Exclusion (b) is simply further clarification in the policy that contract-based claims are not covered."); *Silk v. Flat Top Const., Inc.*, 192 W. Va. 522, 526 (1994) (in determining that the insurer had no duty to defend under the Contractual Liability Exclusion, court applied a version of the economic loss doctrine in concluded the negligence claim sounded only in contract).

[34] The only difference between the two exceptions is that the "insured contract" exception responds to situations where an insured agrees to indemnify another third party (*i.e.,* "insured contracts"), while the second exception is relevant to the direct breach of contract claims at issue here.

<u>DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY</u> – PAGE 18

exception. Ewing implies that this distinction is somehow significant.

Actually, both the "insured contract" exception and the second exception at issue here include the *same* critical language: liability that the insured would have "in the absence of the contract or agreement."[35]  In concluding that the Contractual Liability Exclusion focused on the difference between tort law and contract, the court relied upon the this common language as follows:

> Thus, to fall within the exclusion's [insured contract] exception, the Hillwood petition must make specific factual contentions that, when construed liberally, could constitute "a liability that would be imposed by law **in the absence of any contract or agreement**." Our inquiry, therefore, focuses on the difference between common law tort and contract causes of action in Texas.

*Hardscape*, 578 F.3d at 267 (emphasis added).  Indeed, the Supreme Court of Texas in *Gilbert* also recognized that the two exceptions are identical in this respect.[36]  Thus, the contract/tort distinction that Ewing attempts to avoid in the present case is compelled by the policy language restoring coverage *only* for liability "in the absence of the contract or agreement" included in both exceptions. As Ewing concedes that *Hardscape* correctly applied the Exclusion, this Court should follow the Fifth Circuit's lead, and find that coverage for the Underlying Lawsuits seeking solely damages

---

[35] Specifically, the "insured contract" exception at issue in *Hardscape* restored coverage for liability for damages assumed in "any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." *Hardscape,* 578 F.3d at 266.  The policy then defined "tort liability" as "a liability that would be imposed by law **in the absence of any contract or agreement."** *Id.* (Emphasis added.)  Similarly, the second exception at issue in the present case contains this same bolded language above relied upon the Fifth Circuit for the tort/contractual dichotomy, as follows:

> This exclusion does not apply to liability for damages:
> (1) That the insured would have **in the absence of the contract or agreement**

(STIP 000129, at §I, 2. Exclusions, b.)

[36] *Compare Gilbert*, 327 S.W.3d at 128 ("We agree that the insured-contract exception brings back into coverage contracts in which the insured assumes the *tort* liability of another") (emphasis added); *with Id.*, 327 S.W.3d at 134 (finding that the second exception only restores coverage when the insured "would have had liability for [the underlying plaintiff's] damages *absent* its contractual undertaking.") (emphasis added).

sounding in contract are excluded under the Contractual Liability Exclusion.[37]

## VI.
## AN EXCEPTION TO THE YOUR WORK EXCLUSION DOES NOT RENDER THE CONTRACTUAL LIABILITY EXCLUSION AMBIGUOUS

As previously noted, Ewing wholly fails to proffer any reasonable interpretation of what the Contractual Liability Exclusion means in light of the *Gilbert* decision. With its last gasp, Ewing simply argues that it *can't* mean what it says. To support this strange theory, Ewing invites this Court on an Easter egg hunt to find some factual scenario in which the subcontractor exception to the Your Work Exclusion would apply, and the Contractual Liability Exclusion would not. In essence, Ewing complains that the Contractual Liability Exclusion is ambiguous because it somehow conflicts with another exclusion's exception, a position that is at odds with *Gilbert*, 327 S.W.3d at 132 (holding the Exclusion is unambiguous, and concluding "that the exclusion means what it says."). Significantly, Ewing and its counsel raised this identical argument before the Supreme Court in moving for rehearing in *Gilbert*.[38] However, the Court did not bat an eye.

It is easy to see why the Supreme Court of Texas was unmoved by this novel argument. The

---

[37] Ewing also points out that the parties involved in *Hardscape* "agreed that the Contractual Liability Exclusion applied to the facts at hand and, thus, the argument before the court focused only on whether the 'insured contract' exception was applicable." (Ewing's Response, pg. 13.) However, as addressed in Amerisure's Motion For Summary Judgment and this Response, the Contractual Liability Exclusion, which negates contract-based claims, cannot be interpreted in isolation from either of its two exceptions that restore coverage for tort liability. Indeed, contrary to Ewing's statement, the Fifth Circuit in *Hardscape* did not interpret the exception in a vacuum that only focused on whether the exception was inapplicable. The court painstakingly applied the economic loss doctrine to determine whether the loss sounded in contract (which would have been excluded), versus whether it alleged independent tort damages (which would have triggered the exception). *See Hardscape*, 578 F.3d at 267-270. ("[T]he policy's 'contractual liability' **exclusion operates** to exclude the claims arising from the Hillwood suit, and no tort claim triggers the exclusion's 'insured contract' exception.") (emphasis added). This analysis recognized the common sense notion that in order to determine whether *Hardscape* faced tort liability, it had to simultaneously be determined whether *Hardscape* faced liability assumed by contract. *Id.*, 578 F.3d at 270. Thus, the Exclusion and its exceptions are interwoven together, and cannot be analyzed in isolation as Ewing contends.

[38] (Ex. C, pg. 5; and Ex. B, pg. 1, adopting all arguments by *amici*, and pg. 4.)

Fifth Circuit has routinely held that exclusions operate independently to each other, as follows:

> Solely because one provision excepts from exclusion certain types of losses, does not necessarily lead to the conclusion that these losses are covered automatically under the policy.  These "excepted losses" are nevertheless subject to the remaining provisions of the policy, including other exclusions.  **Consequently, we hold that this policy is not ambiguous merely because two provisions contained in the policy-the "faulty workmanship exclusion" and the "deterioration exclusion"- had some relevancy to the nature of Gal-Tex's claimed losses.**

*Gal-Tex Hotel Corp. v. Home Ins. Co.*, 46 F.3d 66, n.1 (5th Cir. 1995) (emphasis added) (not selected for publication).[39]  Similarly, in considering the same argument based on a prior version of the contractual liability exclusion and the your work exclusion,[40] the Houston Court of Appeals recognized that exclusions operate independently of one another, as follows:

> The limitations on coverage are set forth in the exclusion clauses of the policy, and each exclusion is meant to be read with the insuring agreement, **independently of every other exclusion**.  ...  Other courts have not found [the contractual liability exclusion] ambiguous in  relation to other policy exclusions, and neither do we.

*T.C. Bateson*, 784 S.W.2d at 698-99 (emphasis added).[41]  Further, each of the jurisdictions the Texas

---

[39] *United Nat. Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 452-53 (5th Cir. 2007), opinion amended on denial of reh'g, 525 F.3d 400 (5th Cir. 2008) ("[T]he [Supreme Court in *Feiss*] reaffirmed the general interpretive maxim that a general clause permitting coverage cannot render ineffective another clause that contains a specific and unambiguous coverage exclusion.  [The insured's] reading of the United National CLE would require this court to hold that **an exception to an exclusion** ... can impliedly neutralize all other specific exclusions to coverage.  We decline to reach this anomalous result") (citing *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 748-52 (Tex. 2006)). *Tradin Organics USA, Inc. v. Maryland Cas. Co.*, 325 Fed. Appx. 10, 11 (2nd Cir. 2009), *cert. denied*, 130 S. Ct. 744, 175 L. Ed. 2d 541 (U.S. 2009) ("Since the "Your Product" exclusion clearly applied to bar coverage of Tradin's claim, it is irrelevant whether the "Your Work" exclusion-and/or its exception-also applied.  Coverage was already barred, the "Your Work" exclusion did not create an affirmative grant of coverage, and there was no ambiguity as to the contractual language.").

[40] The prior version of the contractual liability exclusion (appearing in pre-1986 forms as *exclusion (a)*) contained an exception that the contractors in Texas claimed restored coverage for construction defect claims.  When a carrier would rely upon another exclusion to negate coverage for breach of fitness claims, like the your work exclusion (*exclusion m* in the prior form), the contractor would argue that the insurer was rendering this exception meaningless.

[41] The Supreme Court of Texas recently relied upon *T.C. Bateson* in its *Nokia* decision.  268 S.W.2d at 500. *See also Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 505 (Tex.Civ.App.–Texarkana 1979, no pet.).

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 21

Supreme Court cited in Footnote 9 of *Gilbert* has adopted the same reasoning set forth in *T.C. Bateson*. (*See* Ex. G). Therefore, as the Contractual Liability Exclusion independently operates to negate coverage in the present case, Ewing's argument must be rejected.[42]

Next, Ewing's improper theory is dependent upon there being *no* scenarios in which the subcontractor exception to the Your Work Exclusion applies and the Contractual Liability Exclusion does not. Ewing invites this Court on an Easter egg hunt to find some factual scenario in which the subcontractor exception would restore coverage for construction defects. However, courts are not in the business of speculation. *Gilbert*, 327 S.W.3d at 135 ("speculation about coverage of insurance policies based on surmised factual scenarios is a risky business because small alterations in the facts can warrant completely different conclusions as to coverage.").[43]

Nonetheless, there are myriad scenarios where the subcontractor exception to the Your Work Exclusion restores coverage that is not excluded by the Contractual Liability Exclusion. For example, imagine a general contractor constructs a building pursuant to a contract with an owner. After the work is complete, the owner enters into a new contract with the same general contractor for an expansion to the building. While working on the expansion, one of the subcontractors hired by the general accidentally causes property damage to the original portion of the building. In such a case, the Contractual Liability Exclusion would not apply, because the damage is outside of the

---

[42] In a footnote, Ewing states that "Amerisure likely will argue that Ewing attempts to create coverage though an exclusion." Ewing then contends that *Lamar Homes* rejected this argument. However, *Lamar Homes* never rejected the notion that exceptions to exclusion can create coverage when there is none. Instead, *Lamar Homes* found the opposite. *Lamar Homes*, 242 S.W.3d at 14 ("[W]e have not said that the subcontractor exception creates coverage.").

[43] Curiously, Ewing relies on this *same* quote from the *Gilbert* opinion to argue that this Court should accept its invitation to speculate about the "interplay" of the Contractual Liability and Your Work Exclusions, based on the same type of surmised factual scenarios the *Gilbert* Court warned about. (Ewing's Response, pg. 22.)

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY – PAGE 22

subject matter of the contract between the owner and the general contractor (the expansion). Meanwhile, the Your Work Exclusion *would* apply because the original portion of the building constitutes Your Work with respect to the general contractor, and occurred within the "products completed operations hazard." Then, the subcontractor exception would restore coverage since the damage was caused by a subcontractor performing work on the general contractor's behalf. In the absence of any other considerations, the general contractor would have coverage under its CGL policy for liability resulting from such damage. Thus, Ewing's premise fails.

Finally, even if Ewing's premise was correct – which it clearly is not – the Your Work Exclusion still would not be reduced to "mere surplusage." Ewing fails to recognize that both the Contractual Liability and Your Work Exclusions are part of the *standard* CGL form used across the nation. For this reason, the Texas Supreme Court has gone to great lengths to interpret standard CGL terms in a manner than can be consistently applied to liability arising under not just Texas law, but the laws of other states as well.[44]

Amerisure notes that at least twenty-three other jurisdictions seemingly recognize that liability for construction defects may be imposed under tort principles or by statute, even where the only damage is to the work itself that is the subject matter of the construction contract. (*See* Ex. E.)

---

[44] *Gilbert*, 327 S.W.3d at 125 (Tex. 2010) ("The meaning of terms and exclusions within a standard policy should theoretically be the same in Texas as in other states."); *Lamar Homes*, 242 S.W.3d at 5 (Tex. 2007) ("The CGL is a standard form developed by the Insurance Services Office, Inc. ("ISO") and is used throughout the United States. The meaning of these terms and their application to cases involving defective construction should therefore be *the same* in Texas as in other states.") (emphasis added); *Nokia*, 268 S.W.3d at 497 (Tex. 2008) ("We have repeatedly stressed the importance of uniformity when identical insurance provisions will necessarily be interpreted in various jurisdictions."); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 824 (Tex. 1997) ("When identical insurance provisions will necessarily be interpreted in various jurisdictions, we think it prudent to strive for uniformity as much as possible."); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 (Tex. 1995) ("Courts usually strive for uniformity in construing insurance provisions, especially where, as here, the contract provisions at issue are identical across the jurisdictions.").

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE AND REPLY** – PAGE 23

Unlike Texas, these states do not apply the economic loss doctrine to re-characterize such claims as sounding "only in contract." *Compare Jim Walter Homes*, 711 S.W.2d at 618 (Tex. 1986) *with* cases in Ex. E. Therefore, even if Ewing's contentions had merit with respect to Texas law, when one applies the interpretation of the standard CGL form adopted by the Texas Supreme Court on a nation-wide basis – as the Supreme Court often instructs – the Your Work Exclusion would still have broad applicability in the construction defect context.

## VII.
## THE J(5) AND J(6) EXCLUSIONS INDEPENDENTLY NEGATE COVERAGE

Independent from the Contractual Liability Exclusion, the J(5) and J(6) Exclusions also preclude coverage in the present case relating to the Underlying Lawsuit. (Amerisure's Cross-Motion, pg. 22.) As conceded by Ewing, and recognized by the court in *David Lewis Builders*, the Exclusions preclude coverage when the damage to the insured's work begins prior to the completion of the work. (Ewing's Response, pg. 20); *David Lewis Builders*, 720 F.Supp.2d at 791.

Ewing contends that Amerisure "blatantly misrepresents" that the Underlying Lawsuit alleges damages prior to the completion of the work. (Response, at pg. 20.) In leveling this charge, Ewing turns a blind eye to the word "continued" and the other allegations which precede the quoted allegation it relies on. The surrounding allegations establish beyond a doubt that the cracking and flaking allegedly began *prior* to completion of the work. Specifically, as quoted by Ewing, the allegation states that: "Ewing gave notice of substantial completion on or about April 2009 **but** serious tennis court cracking and flaking problems have **continued** after that date to the present." (*Id.,* emphasis added.) Of course, for this deterioration to have "continued" after completion, it

necessarily must have *begun* **prior to** completion.  As such, Ewing's attacks are off base.[45]

## VIII.
## NO DUTY TO DEFEND, NO DUTY TO INDEMNIFY

Finally, Ewing concedes that if the Court finds that Amerisure does not owe a duty to defend, it must also find that Amerisure owes does not owe duty to indemnify.  *Hardscape*, 578 F.3d at 270. On the other hand, if the Court finds that Amerisure owes a duty to defend, the duty to indemnify is not justiciable until the Underlying Lawsuit has been resolved.

WHEREFORE, PREMISES CONSIDERED, Defendant, Amerisure Insurance Company, respectfully requests that this Court grant Amerisure's Cross-Motion For Summary Judgment, deny Ewing's Motion For Partial Summary Judgment, declare that Amerisure does not owe a duty to defend nor indemnify Ewing from any claims arising out of the Underlying Lawsuit, and declare that Amerisure did not violate the Prompt Payment of Claims Act.  In addition, Amerisure prays for such further relief to which it may be entitled.

---

[45] Ewing coyly observes that the allegations of damage occurring prior to completion of the work were removed from subsequent amended versions of the underlying petition, shortly after Ewing's counsel became involved in the case.  Ewing contends that even if coverage is not found under the Original Underlying Petition, Amerisure has a duty to defend based on these later amended Underlying Petitions.  In the event the Court finds this discrepancy relevant, Amerisure respectfully requests an opportunity to conduct discovery into whether these amendments were the product of a collusive attempt to trigger liability insurance that would justify reliance on extrinsic evidence in this case. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 311 (Tex. 2006) (adhering to the eight corners rule where "the record before us does not suggest collusion.")*; See also Ohio Cas. Ins. Co. v. Cooper Mach. Corp.*, 817 F. Supp. 45, 48 (N.D. Tex. 1993) ("Moreover, [the claimant and the insured] are mistaken in thinking that the claimant can, in effect, create coverage by a false allegation of a coverage fact in the state court pleading.").

Respectfully submitted,

**PRUESSNER & ALEXANDER**

*/s/ David M. Pruessner*

**DAVID M. PRUESSNER**
State Bar No. 16364500
S.D. No. 22475
**JES ALEXANDER**
State Bar No. 24040404
S.D. No. 839819
13155 Noel Road, Suite 1025
Dallas, Texas 75240
(972) 991-6700
(972) 991-6710 [Fax]
david@prulaw.com
jes@prulaw.com
**ATTORNEYS FOR DEFENDANT**
**AMERISURE INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that a true and correct copy of Defendant Amerisure Insurance Company's Reply In Support Of Its Cross-Motion For Summary Judgment has been sent via Filing Users through the Notice of Electronic Filing to the following counsel of record on this 11th day of March, 2011:

Lee H. Shidlofsky
Visser Shidlofsky LLP
Greystone Plaza
7200 N. Mopac Expwy., Suite 430
Austin, Texas 78731

*/s/ David M. Pruessner*

**DAVID M. PRUESSNER**