UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EWING CONSTRUCTION CO., INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-256 |
| | § | |
| AMERISURE INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day came on to be considered Plaintiff's Motion for Partial Summary Judgment (D.E. 19) and Defendant's Cross-Motion for Summary Judgment (D.E. 20). For the reasons stated here, Plaintiff's Motion for Partial Summary Judgment is DENIED (D.E. 19) and Defendant's Cross-Motion for Summary Judgment is GRANTED (D.E. 20).

**I.      Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**II.      Factual and Procedural Background**

This action was filed on July 29, 2010.  (D.E. 1.)  On February 4, 2011, the parties entered a Revised Joint Stipulation of Facts, Pleadings, and Policies.  (D.E. 18.)  The following factual and procedural background is derived from that stipulation.

Plaintiff Ewing Construction Company, Inc. ("Ewing" or "Plaintiff") is the named insured under a package insurance policy, including Commercial General Liability ("CGL") coverage, issued by Defendant Amerisure Insurance Company ("Amerisure" or

"Defendant"), bearing policy number CPP2037436-02 and effective June 1, 2007 to June 1, 2008.  The 2007-2008 Policy was renewed for the past three years under policy numbers CPP2037436-03, which was effective June 1, 2008 to June 1, 2009, CPP2037436-04, effective June 1, 2009 to June 1, 2010, and CPP2037436-05, effective June 1, 2010 to June 1, 2011 (collectively, including the 2007-2008 Policy, the "Policies").  (D.E. 18-1 – D.E. 18-15.)

On February 25, 2010, Ewing was sued in a lawsuit styled <u>Tuloso-Midway Independent School District v. Liberty Mutual Insurance Company, et al.</u>, Cause No. 10-603421, in County Court at Law No. 1 of Nueces County, Texas (the "Underlying Lawsuit").  The plaintiff in the Underlying Lawsuit, Tuloso-Midway Independent School District ("Tuloso-Midway"), seeks damages from Ewing with regard to allegedly deficient construction of a tennis facility in Corpus Christi, Texas pursuant to a contract between Ewing and Tuloso-Midway (the "Contract").

After the Underlying Lawsuit was filed, Ewing timely tendered Tuloso-Midway's Original Petition to Amerisure for defense.  On March 4, 2010, Amerisure denied that it owed a duty to defend based on the allegations in the Original Petition.  Amerisure reiterated its denial of coverage on June 21, 2010.  On July 26, 2010, Amerisure denied coverage based on the allegations in the First Amended Original Petition filed in the Underlying Lawsuit.  Amerisure continues to deny coverage with respect to the Underlying Lawsuit, in which a Second Amended Original Petition has now been filed.

Due to Amerisure's denials, Ewing filed this action on July 29, 2010.  (D.E. 1.) In its complaint, Ewing seeks declaratory relief that "Amerisure is obligated to provide a defense to Ewing in the Underlying Lawsuit."  (D.E. 1 at 4.)  Ewing also states a claim

for breach of the insurance contract between the parties and violation of the Texas Prompt Payment of Claims Statute, Tex. Ins. Code § 542.051 et seq.  (D.E. 1 at 4-5.) Amerisure filed a counterclaim on August 13, 2010, requesting "a declaration that it owes no duty to defend nor indemnify Ewing from the claims in the Underlying Lawsuit." (D.E. 7 at 2.)  An actual controversy exists between Ewing and Amerisure with respect to their rights and obligations under one or more of the Policies in connection with the Underlying Lawsuit, and this controversy is ripe for adjudication.

Plaintiff filed its Motion for Partial Summary Judgment on February 4, 2011 (D.E. 19), and Defendant filed its Cross-Motion on February 21, 2011 (D.E. 20).  The briefing is now fully submitted.  (D.E.  22; 29; 30.)[1]

## III.   Discussion

### A.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

---

[1] On March 25, 2011, Defendant sought leave to file an amended reply after consultation with counsel for Ewing, in order to clarify its argument with respect to Ewing's counsel's statements before the Texas Supreme Court in Gilbert.  (D.E. 24; D.E. 25.)  Plaintiff, still dissatisfied with some aspects of the amended reply, sought leave to file a surreply, to further clarify its position.  (D.E. 25.)  The Court granted both motions.  (D.E. 27; D.E. 28.)  Although the Court welcomes the clarifications, and finds the arguments made before the Gilbert Court relevant, it does not rely upon those specific arguments in any meaningful way in reaching its conclusion in this case.

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case."  Rivera, 349 F.3d at 247.  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).  As this case involves issues of law, not fact, it is appropriate for resolution on summary judgment.

**B.     Declaratory Judgment Act, 28 U.S.C. § 2201**

Title 28 U.S.C. § 2201(a), the Declaratory Judgment Act, provides, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

The Declaratory Judgment Act does not confer federal jurisdiction; rather, the parties must provide an independent basis for jurisdiction. Comstock Oil & Gas Inc. v. Ala. & Coushatta Indian Tribes of Tex., 261 F.3d 567, 573 n. 5 (5th Cir. 2001). The Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." AXA Re Property & Cas. Ins. Co. v. Day, 162 Fed. App. 316, 319 (5th Cir. 2006) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).

Here, both parties seek declaratory judgment with respect to their rights and obligations under the Policies. (D.E. 1, D.E. 7.)

### C.    Duty to Defend and Duty to Indemnify

#### 1.    Background

As the Texas Supreme Court has explained, "[i]n liability insurance policies generally, an insurer assumes both the duty to indemnify the insured, that is, to pay all covered claims and judgments against an insured, and the duty to defend any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy, even if groundless, false or fraudulent, subject to the terms of the policy. However, the duty to defend and the duty to indemnify are distinct and separate duties." D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co. Ltd, 300 S.W.3d 740, 743 (Tex. 2009); Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 490 (Tex. 2008).

To determine whether the insurer owes a duty to defend, a court must apply the "eight corners rule." Under this rule, "[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy." King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002). "Resort to evidence outside the four corners of these two documents is generally prohibited." Mid-Continent Cas. Co. v. JHP Development, Inc., 557 F.3d 207, 212 (5th Cir. 2009); see also Liberty Mut. Ins. Co. v. Graham, 473 F.3d 596, 599-600 (5th Cir. 2006) ("[O]nly two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the underlying claimant.  Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage.").  Thus, "[i]f the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend." Liberty, 473 F.3d at 600.

When the insurer refuses to defend based on a policy exclusion, the insurer bears the burden of showing that the complaint's allegations trigger the exclusion.  See Harken Exploration Co. v. Sphere Drake Ins. PLC, 261 F.3d 466, 471 (5th Cir. 2001).  All doubts as to the duty to defend are resolved in favor of the insured.  King, 85 S.W.3d at 187; see Empire Indem. Ins. Co. v. Allstate County Mut. Ins. Co., 319 Fed. App. 336, 340 (5th Cir. 2009).  However, "[i]f the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage."  Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 124 (Tex. 2010).  The duty to defend does not depend upon the truth or falsity of the allegations; a plaintiff's factual allegations that potentially support a covered

claim are all that is needed to invoke the insurer's duty to defend.  <u>JHP Development, Inc.</u>, 557 F.3d at 212.

Defendant here also moves for summary judgment on the duty to indemnify, should the Court find no duty to defend.  The Texas Supreme Court has explained, "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." <u>Farmers Texas County Mut. Ins. Co. v. Griffin</u>, 955 S.W.2d 81, 84 (Tex. 1997); <u>see</u> <u>Century Sur. Co. v. Hardscape Const. Specialties Inc.</u>, 578 F.3d 262, 270 (5th Cir. 2009) (citing <u>Griffin</u>).

### 2.    Analysis

In analyzing this case, the Court must first determine whether the claims fall within the broad scope of the Policy.  If the Court makes this determination, it must then decide whether a Policy exclusion is applicable.  Finally, if it decides that a Policy exclusion applies, it must ascertain whether an exception to the Policy exclusion also applies, thus bringing the claim back within coverage.

### a.    Policy Coverage

The Court first considers whether the allegations covered in the Underlying Lawsuit are covered by the policy.  Defendant appears to concede that the Underlying Lawsuit falls within the general coverage of the policy (as it does not respond to Plaintiff's arguments on this issue), but rather argues that certain exclusions preclude coverage.  The Court briefly considers the coverage of the policy, and then turns to the exclusions.

The Policy at issue provides in relevant part, "[t]his insurance applies to . . . 'property damage' only if: (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory,' [and] (2) The . . . 'property damage' occurs during the policy period."  (D.E. 18-3 at 8.)[2]  Thus, the duty to defend applies only if the Underlying Lawsuit alleges (1) property damage, (2) caused by an occurrence, (3) that occurred during the policy period.

"Property damage" is defined as "(a) Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."  (D.E. 18-3 at 21-22; see also Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 8-9 (Tex. 2007) ("'Property damage' consists of physical injury to tangible property and includes the loss of use of tangible property.").)  The property damage element is clearly satisfied here, as the Underlying Lawsuit alleges "serious tennis court cracking and flaking problems," starting in April 2009, "[c]hunks of the course surfaces are coming loose" and "[f]laking, crumbling, and cracking" making the courts unusable for competitive events. (D.E. 18-16 at 5.)  There is no dispute that these allegations cover "[p]hysical injury to tangible property."  (D.E. 19 at 15-16.)

---

[2] The Court here references the Policy effective from June 1, 2007 to June 1, 2008.  (D.E. 18-1 at 1.)  As noted above, the policy was renewed each year, and the policy in effect in April 2009 (when the incident occurred) does not differ in relevant part from that in effect from 2007 to 2008.  Because the relevant terms, exclusions, and exceptions remain the same in each Policy, and the parties do not contend that the renewed policies in any way change the analysis (aside from a "repair and rework coverage" endorsement present in the 2009-10 and 2010-2011 Policies), the Court cites to the first Policy for ease of reference.

"Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (D.E. 18-3 at 21.) The Underlying Lawsuit alleges negligent construction (D.E. 18-16) which is sufficient to constitute an occurrence under the Policies. See Lamar Homes, Inc., 242 S.W.3d at 8-9 ("[A]n intentional tort is not an accident and thus not an occurrence regardless of whether the effect was unintended or unexpected. But a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly."); see also id. at 16 ("[C]laims for damage caused by an insured's defective performance or faulty workmanship may constitute an occurrence when property damage results from the unexpected, unforeseen or undesigned happening or consequence of the insured's negligent behavior.") (quotation marks omitted).

Finally, there is no dispute that the allegations in the Underlying Lawsuit relate to conduct occurring during the policy period. The underlying petitions make clear that the damages at issue occurred while the Policy was in effect. (D.E. 19 at 18.)

The Court thus concludes that the allegations in the Underlying Lawsuit are sufficient to come within the coverage of the Policy. The Court now turns to the more contentious issue, the application of certain Policy Exclusions.[3]

### b.       Contractual Liability Exclusion

Defendant argues that a CGL Policy "is designed to cover fortuitous events that are beyond the insured's control," and it does not cover "contractual liability that the

---

[3] Plaintiff's summary judgment motion refers to Exclusion L to the Policies, but states "it is not even clear whether Amerisure contends that Exclusion L bars coverage." (D.E. 19 at 23.) Indeed, Amerisure stated in its denial letter that its denial "is not based on exclusion l," and Amerisure does not reference this Exclusion in its motion for summary judgment. (D.E. 20.) The Court therefore need not discuss Exclusion L.

insured voluntarily assumes."  (D.E. 20 at 11.)  Defendant relies upon certain "Business Risk" exclusions in the Policy that limit coverage for contractual liability, specifically the Contractual Liability Exclusion.  (D.E. 20 at 12-13.)   Plaintiff argues that the exclusion does not bar coverage, as there is no "assumption" of liability, and in any event, liability in the Underlying Lawsuit is alleged in tort, in addition to contract.  (D.E. 22 at 12-22.)

With respect to "business risk" exclusions and CGL policies, the Texas Supreme Court has explained:

> **Coverage under a commercial general liability insurance policy is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained**. Pursuant to this understanding, certain exclusions have been included within the standard commercial general liability policy for the express purpose of excluding coverage for risks relating to the repair or replacement of the insured's faulty work or products, or defects in the insured's work or product itself. These "business risk" exclusions, as they are commonly called, are intended to provide coverage for tort liability, not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained.

Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 500 (Tex. 2008) (emphasis added); see also Lamar Homes, Inc., 232 S.W.3d at 10 ("More often . . . faulty workmanship will be excluded from coverage by specific exclusions because that is the CGL's structure. The CGL's insuring agreement grants the insured broad coverage for property damage and bodily injury liability, which is then narrowed by exclusions that restrict and shape the coverage otherwise afforded.") (citations omitted).

The Contractual Liability Exclusion to the Policy provides, in relevant part:

This insurance does not apply to:

**b.      Contractual Liability**

"[B]odily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract" . . . .

(D.E. 18-3 at 9.)   The Texas Supreme Court has explained that such an exclusion "[c]onsidered as a whole, . . . provide[s] that the policy does not apply to bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except for enumerated, specific types of contracts called 'insured contracts' and except for instances in which the insured would have liability apart from the contract."  Gilbert Texas Const., L.P, 327 S.W.3d at 126.

With respect to the "assumption of liability" part of the exclusion, the Texas Supreme Court in Gilbert explained that the exclusion is not limited to situations where "the insured assumes the liability of another, such as in an indemnity or hold-harmless agreement," but rather "the exclusion's language applies without qualification to liability assumed by contract [with two exceptions.]"  Id. at 128-29.  The court concluded that the contractual liability exclusion "means what it says," and "applies when the insured assumes liability for bodily injuries or property damages by means of contract, unless an exception to the exclusion brings a claim back into coverage or unless the insured would have liability in the absence of the contract or agreement."  Id. at 132.

In its opinion, the Texas Supreme Court cited several cases around that nation that interpret the exclusion "as we do," namely not limiting its scope "to only those situations

in which the insured has assumed the liability of another." Id. at 130 & n.9. For example, in CIM Insurance Corporation v. Midpac Auto Center, Inc., the court confronted a policy that did "not apply to liability assumed under any contract or agreement." 108 F. Supp. 2d 1092, 1099 (D. Hawaii 2000). The court interpreted this language to mean that "any claim that is dependent upon the existence of an underlying contract is not covered by insurance polices." Id. at 1099-1100. Similarly, in TGA Development, Inc. v. Northern Ins. Co. of New York, 62 F.3d 1089 (8th Cir. 1995), which the Gilbert Court also cited favorably, the court rejected a claim that the contractual liability exclusion "bars coverage only when the insured has expressly agreed by contract 'to save harmless or indemnify' a third party," and stated, "[w]e think that the language [of the exclusion] plainly excludes coverage for contractual claims made for [the contractor's] **failure to provide [the property owner] with a condominium unit free from defects**." Id. at 1091-92 (emphasis added); see also Monticello Ins. Co. v. Dismas Charities, Inc., 1998 WL 1969611, at *2 (W.D. Ky. Apr. 3, 1998) ("[Defendant's] assertion that this exclusion only applies to situations where a party 'contractually assumes the liability for another party,' goes against the plain meaning of the policy language. Liability under a contract does not arise only when a party assumes the liability for another party. Any party to a contract assumes potential liability under the agreement."). The Texas Supreme Court in Gilbert was careful to state, however, "[w]e do not hold that the [contractual liability] exclusion . . . precludes liability for **all breach of contract** claims," but rather it "excludes claims when the insured assumes liability for damages in a contract . . . ." 327 S.W.3d at 128 (emphasis added).[4] Gilbert, therefore,

---

[4] In Gilbert, this assumption of liability was express, as the contract stated that the contractor would "repair any damage to . . . facilities, including those that are the property of a third party, resulting from failure to

stands for the proposition that the contractual liability exclusion applies when an insured has entered into a contract and, by doing so, has assumed liability for its own performance under that contract.[5]

Here, the eight corners rule requires the Court to look only at the Policy and the allegations in the underlying petition to determine whether there is an assumption of liability.  See, e.g., GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 307 (Tex. 2006) ("The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant.  Resort to evidence outside the four corners of these two documents is generally prohibited.").  Texas courts generally do not recognize exceptions to that rule.  See, e.g., AccuFleet, Inc. v. Hartford Fire Ins. Co., 322 S.W.3d 264, 273 (Tex. App. - Houston [1 Dist.], 2009) (declining to recognize exception and stating, "in cases in which the Texas Supreme Court has been asked to acknowledge exceptions to the rule, it has declined to do so").

The pleadings in the Underlying Lawsuit demonstrate that Ewing assumed liability with respect to its own work on the subject matter of the contract, the tennis courts, such that it would be liable for failure to perform under the contract if that work was deficient.  The original petition explained that, "[p]rior to the execution of the contract, Plaintiff's Superintendent, Dr. Cornelio Gonzales met with Ewing several times and, on one or more occasions, told them that Plaintiff wanted quality tennis courts that

---

comply with the requirements of this contract or failure to exercise reasonable care in performing the work."  327 S.W.3d at 126.

[5] The Court notes that Gilbert was decided only on December 17, 2010.  In the approximately four months since the decision was issued, it appears that no other court has discussed it in any detail.  This Court's reading of Gilbert is in line with what appears to be a quite expansive interpretation of the "assumption of liability" phrase in the contractual liability exclusion.

should last at least twenty-five years.  Ewing's representative never demurred and impliedly represented that they would meet that standard."  (D.E. 18-16 at 4.)  The original petition states, in its breach of contract claim, that "[t]he construction is not in accordance with the contract plans and specifications," that Ewing "breached its implied duty of ordinary care," "breached its implied warranty of good workmanship," "breached its implied warranty that the tennis courts in question would be of merchantable quality," "breached its implied warranty that the tennis courts in question would be suitable for their intended purpose," and "breached its express warranty that it would fully execute the work described in the Contract Documents."  (D.E. 18-16 at 5-6.)  The first and second amended petitions make similar claims, alleging that Ewing breached its contract with Tuloso-Midway in the following respects: "(a) [f]ailing to complete construction in accordance with the contract plans and specifications, (b) [f]ailing to exercise ordinary care in the preparation, management and execution of contract, (c) [f]ailing to perform in a good and workmanlike manner; and (d) [f]ailing to properly retain and supervise subcontractors."  (D.E. 18-17 at 7; see also D.E. 18-18 at 6.)

Upon review, the Court concludes that the allegations in the underlying petitions sufficiently demonstrate that Ewing assumed liability for its own construction work pursuant to the parties' contract.  In other words, by entering into the contract with Tuloso-Midway, Ewing is liable if the work it agreed to perform under that contract is defective.  This finding is consistent with Gilbert and the case law relied upon therein. See, e.g., TGA Development, Inc. 62 F.3d at 1091-92 (stating that policy excluded coverage of injuries "[f]or which the insured has assumed liability in a contract or agreement," and finding that this "language plainly excludes coverage for contractual

claims made for [insured's] failure to provide [third party] with a condominium unit free from defects.") (cited in Gilbert, 327 S.W.3d at 130 n.9); Monticello Ins. Co., 1998 WL 1969611, at *2 ("Liability under a contract does not arise only when a party assumes the liability for another party.  Any party to a contract assumes potential liability under the agreement.").  Applying Gilbert, the Court concludes that Ewing assumed liability for its own defective work when it entered into the contract with Tuloso-Midway for construction of the tennis courts at issue.

While Plaintiff relies heavily upon the Texas Supreme Court's decision in Lamar Homes, going so far as to state that "the instant case is more in line with Lamar Homes . . . than Gilbert,"  (D.E. 22 at 16) this is not so.  As the court in Gilbert recognized, the contractual liability exclusion was not even at issue in Lamar Homes, and rather that case considered "whether property damage to a house that resulted from construction defects could nevertheless come within the general terms of liability coverage because the damage resulted from an occurrence as defined by the CGL policy."  327 S.W.3d at 132.[6] The "occurrence" issue has already been addressed above, and resolved in Plaintiff's favor.  Moreover, while it is true that Lamar was a duty to defend case, whereas Gilbert was an indemnification case, 327 S.W.3d at 132-33, the Court relies upon Gilbert for its legal interpretation of the contractual liability exclusion.

In light of the above, the Court concludes that the contractual liability exclusion applies in the circumstances of this case.[7]

---

[6] In Lamar Homes, the court concluded: "allegation of unintended construction defects may constitute an 'accident' or 'occurrence' under a CGL policy and that allegations of damage to, or loss of use of, the home itself may also constitute 'property damage' sufficient to trigger the duty to defend under a CGL policy. We further conclude that the prompt-payment statute . . . . may be applied when an insurer wrongfully refuses to promptly pay a defense benefit owed to the insured." 242 S.W.3d at 20.
[7] The Court recognizes Ewing's concern that "Amerisure's interpretation of the Contractual Liability exclusion would essentially wipe out any coverage for a general contractor for 'property damage' that

c.        **Exception to Contractual Liability Exclusion**

Having determined that the contractual liability exclusion is applicable, the Court must next determine whether an exception to that exclusion brings the claim back into coverage.  The relevant exception here is liability that "the insured would have in the absence of the contract or agreement."  (D.E. 18-3 at 9.)  Plaintiff argues that this exception is plainly applicable, as Tuloso-Midway states claims for negligence as well as breach of contract, and thus there is liability independent of the contract between Ewing and Tuloso-Midway.  (D.E. 22 at 21-22.)  Defendant responds that, notwithstanding Tuloso-Midway's tort claims, the claims sound solely in contract, and there is no liability in the absence of the contract between the parties.  (D.E. 20 at 16-23; see also D.E. 24.)

Once again, the Court's decision is directed by recent precedent.  In Century Surety Co. v. Hardscape Construction Specialties, Inc., 578 F.3d 262 (5th Cir. 2009), the Fifth Circuit confronted a situation similar to the one presently before the Court.  In that case, Hardscape had entered into a contract with Hillwood Residential Services to construct a swimming pool facility for Hillwood at one of its residential developments. The contract included an indemnity provision, under which Hardscape agreed to hold Hillwood harmless against "any damage, liability or cause of action arising directly or indirectly out of or in connection with the performance of Contractor's services."  578 F.3d at 264.  Hardscape later subcontracted with Elite to construct the swimming facility pools, and the subcontractor agreement applied the same terms and conditions as the contractor-owner agreement.  Elite held an insurance policy issued by Century Surety

---

occurs to the project."  (D.E. 30 at 4 n.4.)  While the Court may not read Gilbert as broadly as Amerisure does, and indeed makes no general findings about its application beyond this case, it does agree with the conclusion that it operates to exclude coverage in the present circumstances and in that sense is quite broad in application.

Company that covered certain "occurrences."  The insurance contract contained the same contractual liability exclusion as exists here.  578 F.3d at 264-65.

After the subcontractors completed construction, Hillwood sued Hardscape and Elite alleging that faulty design and construction had caused physical and aesthetic damage to the pool and its surroundings.  Relevant here, the petition asserted claims for breach of contract as well as negligence and gross negligence.  Id. at 265.  Hardscape demanded indemnification from Elite, and Elite forwarded the demand to Century, who did not respond.  Century later sued in federal court, seeking a declaratory judgment that it was not obligated to defend or indemnify Elite or Hardscape.  Id.

The Fifth Circuit considered whether the "insured contract" exception to the contractual liability exclusion applied.[8]  This exception would be triggered only if the Hillwood state court petition "properly alleges a tort cause of action against Hardscape under the 'eight corners' rule applied by Texas courts."  Id. at 266.[9]  The court explained, "to fall within the exclusion's exception, the Hillwood petition must make specific factual contentions that, when construed liberally, could constitute 'a liability that would be imposed by law in the absence of any contract or agreement.'"  Id. at 267.  The court then focused on "the difference between common law tort and contract causes of action in Texas," offering the following analysis:

---

[8] The exclusion provided that the insurance did not cover "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, but excepted from that exclusion certain contractual obligations to pay another party's tort liability."  578 F.3d at 264-65.

[9] Although Plaintiff is correct that the specific exception at issue in Hardscape was the "insured contract" exception, the term "tort liability" in that exception was defined as "liability that would be imposed by law in the absence of any contract or agreement."  578 F.3d at 266.  This definition is essentially the same as the exception relevant here, which excepts coverage for "liability for damages: (1) That the insured would have in the absence of the contract or agreement."  Thus, the Hardscape analysis is directly relevant in this case.

To determine the nature of a Texas lawsuit, we must look to the substance of the cause of action and not necessarily the manner in which it was pleaded.   Texas courts characterize actions as tort or contract by focusing on the source of liability and the nature of the plaintiff's loss:

> . . . Tort obligations are in general obligations that are imposed by law – apart from and independent of promises made and therefore apart from the manifested intention of the parties – to avoid injury to others.  If the defendant's conduct – such as negligently burning down a house – would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct – such as failing to publish an advertisement – would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.
>
> **In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.**

Id. at 267 (internal citations omitted; emphasis added).[10]  The court then considered the complaint, which alleged that "[s]oon after the construction of the swimming facility, cracks first began to appear in the walls and floor of the competition pool," the "pools began showing signs of structural problems," and "[t]he decking surrounding the pools, including the 'cool deck' installed over the original decking, became uneven."  Id. at 268.  The plaintiff then asserted a claim of "negligence," in addition to breach of contract, and alleged damages associated with fixing the damage to the pool as well as reconstruction

---

[10] This concept is commonly referred to as the "economic loss doctrine."  While Plaintiff strongly disputes whether the economic loss doctrine may be applied in the duty to defend context (as opposed to duty to indemnify context) (D.E. 22 at 18-21) the Fifth Circuit's analysis in Hardscape applied the doctrine in the context of the eight corners rule.   Hardscape, 578 F.3d at 266 ("[T]he Hillwood petition triggers the exclusion's exemption only if it properly alleges a tort cause of action against Hardscape under the 'eight corners' rule applied in Texas courts.").  Further, although the Texas Supreme Court in Lamar Homes stated that the economic loss rule "is not a useful tool for determining insurance coverage," 242 S.W.3d at 12, the Fifth Circuit was aware of this decision and noted that Lamar Homes' "discussion of coverage under the 'occurrence' term addressed no such tort/contract-based exclusion."  578 F.3d at 266 n.4.  The Court finds that the economic loss rule is properly applied in this context, consistent with Hardscape.

of properly designed pools.  Id. at 269.  Reviewing these allegations, the Fifth Circuit concluded:

> Most of these allegations are easily classified as giving rise to contract claims - namely, **because the damages occurred only to the subject matter of the Hillwood-Hardscape contract**, and because no liability would arise independently of the contract.  **Thus, Hillwood made contract claims when it alleged that Elite's failure to properly design and construct the pools caused cracks** in the walls and floor of the pool, aesthetic damage, pool structural damage, and the like.  **Similarly, the resulting need to identify, diagnose, and correct the design and construction defects gave rise only to contract claims**.

Id. (emphasis added).  With respect to allegations regarding damage to the decking, the court stated that "[t]he decking portion of the Hillwood petition's allegations sound in contract because the damage occurred only to the subject matter of the Hillwood-Hardscape contract, and because any liability arising from damage to the decking exists only as a result of the contract.  **A different result might obtain if, for example, Hillwood had alleged that the faulty pool construction damaged its business interests or adjacent property, but that is not the case**."  Id. at 270 (citations omitted; emphasis added).  The court thus concluded that the contractual liability exclusion operated to exclude the claims arising from the Hillwood suit, and no exception was applicable.  Id.

The district court in David Lewis Builders, Inc. v. Mid-Continent Cas. Co., 720 F. Supp. 2d 781, recently applied Hardscape's principles.  In David Lewis, a contractor (Lewis) was sued by property owners (the Blakes) for damage to a home that the contractor had constructed pursuant to a contract between the parties.  The property owner brought suit alleging breach of contract, negligence, and breach of warranties.

The court applied Hardscape and concluded that the claims in the underlying suit sounded only in contract.  The court explained:

> the . . . negligence theory . . . is based directly on obligations assumed by Lewis under its contract with the Blakes, as is clearly shown by the allegations on which the negligence theory is expressly predicated that Lewis owed the Blakes 'a duty to perform its contract with care, skill, reasonable expedience and faithfulness' and that Lewis breached its contractual duty to the Blakes by committing the various acts that are alleged in Count V to have been negligence.  **Moreover, the allegations . . . make clear that the only loss or damage suffered by the Blakes was the subject matter of their contract with Lewis - the house that Lewis contracted to build for them. The nature of the Blakes' loss is that they did not receive from Lewis the house they contracted for**. . . . Thus, by contending that the insurance policy issued by Mid-Continent provides liability insurance coverage for the Blakes' claim against Lewis, Lewis is, in effect, seeking reimbursement under its liability insurance policy for costs required to complete the proper performance of its construction contract with the Blakes.

Id. at 786-87 (emphasis added).[11]  The court thus concluded that the claims sounded in contract, not tort.  Id.

Applying Hardscape here, Tuloso-Midway alleges in the underlying suit that the tennis courts, the subject matter of the contract between Tuloso-Midway and Ewing, began to crack and show other structural defects soon after construction was completed. The damage alleged is damage to the subject matter of the contract, nothing else.  Tuloso-Midway's original petition states that it wanted "quality tennis courts that should last at least twenty-five years," that Ewing represented that it could perform the work, and based upon these assurances the parties entered into the contract.  (D.E. 18-16 at 4-5.)  It further states that "Ewing gave notice of substantial completion on or about April 20, 2009 but serious tennis court cracking and flaking problems have continued after that date to the

---

[11] The David Lewis court later concluded, however, that the contractual liability exclusion did not apply based upon a decision that preceded Gilbert, and held that the "assumption" clause limited the exclusion to "liability incurred when one promises to indemnify or hold harmless another, and does not refer to the liability that results from breach of contract."  720 F. Supp. 2d at 788.

present.   Chunks of the court surfaces are coming loose.   Flaking, crumbling, and cracking make the courts unusable for any competitive event."   (D.E. 18-16 at 5.) Tuloso-Midway states that the actions alleged "constitute breach of contract," as "[t]he construction is not in accordance with the contract plans and specifications."   Notably, it pleads in the alternative that Ewing "breached its implied duty of ordinary care to Plaintiff through its **negligence in the preparation and management of construction**." (D.E. 18-16 at 5 (emphasis added).)   Tuloso-Midway's negligence claim is also based solely upon Ewing's alleged failures in the tennis court construction process, such as failure to properly prepare for and manage construction, failure to properly retain and oversee subcontractors, and failing to take corrective action.   (D.E. 18-16 at 8.)   The allegations in the First Amended Original Petition do not differ materially in this regard. (D.E. 18-17 at 5.)   Similar to the Original Petition, the amended petition states that Ewing breached its contract in part by "[f]ailing to exercise ordinary care in the preparation, management and execution of construction."   (D.E. 18-17 at 7.)   The negligence cause of action is based upon the same conduct that forms the breach of contract claim.   (D.E. 18-17 at 7, 8.)   The Second Amended Original Petition (presently the live pleading) also does not differ materially on this topic.   (D.E. 18-18 at 4.)

The recovery sought is also limited to the subject matter of the contract. Specifically, Tuloso-Midway seeks in its original petition: (a) out-of-pocket expenses, (b) loss of use of the tennis courts because of the construction defects and consequent delays, (c) loss of the benefit of the bargain, (d) costs of repairs and remediation or completion resulting from construction or design defects, (e) the difference between the value of the tennis courts in question as promised and contracted for and as actually delivered, (f) the

cost of letting another contract and beginning construction anew so as to provide the same quality of courts as those promised and contracted for, and (g) reasonable and necessary engineering, consulting or other expert fees.  (D.E. 18-16 at 9.)  The first and second amended petitions state the same damages, but delete damages for "loss of the benefit of the bargain."  (D.E. 18-17 at 10; D.E. 18-18 at 8.)  Tuloso-Midway does not claim damages to, nor seek recovery for, any other property on the school grounds not covered by the contract.

This analysis necessarily leads to the conclusion that Tuloso-Midway's claims against Ewing in the Underlying Lawsuit sound only in contract, not tort, consistent with Hardscape.  As such, the Court must conclude that the exception to the contractual liability exclusion, providing for coverage for liability that "the insured would have in the absence of the contract or agreement," is not applicable.  Hardscape, 578 F.3d at 269-70.

Thus, because the Court concludes that the contractual liability exclusion is applicable, and no exception to that exclusion brings the claim back within the scope of coverage, Defendant Amerisure has no duty to defend in this case.

### d.    No Duty to Indemnify

Because Amerisure has no duty to defend, it also has no duty to indemnify for the same reason.  As noted above, "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."  Griffin, 955 S.W.2d at 84.   Such is the case here. Amerisure has no duty to defend because the claims at issue in the lawsuit fall outside the scope of coverage due to the contractual liability exclusion, and the same reasons that

negate the duty to defend also negate the duty to indemnify.  (See D.E. 18-3 at 9 ("This insurance does not apply to: . . . (b) Contractual Liability.").)  Amerisure thus has no duty to indemnify Ewing in the Underlying Lawsuit.

### D.    Prompt Payment of Claims Act

As the Court has ruled that Amerisure has no duty to defend or indemnify Ewing in the Underlying Lawsuit, there is no violation of the Prompt Payment of Claims Act, Tex. Ins. Code § 542.060.[12]   As the Texas Supreme Court has explained, "[t]here can be no liability under [the statute] if the insurance claim is not covered by the policy." Progressive County Mut. Ins. Co. v. Boyd, 177 S.W.3d 919, 922 (Tex. 2005).  To prevail under the statute, "the plaintiff must first establish that there is a claim under the insurance policy for which the insurer is liable.  However, if the Policy does not provide coverage for the claims asserted in the underlying lawsuit, the insurer is not liable and the plaintiff may not recover."  Mary Kay Holding Corp. v. Fed. Holding Co., 2007 WL 4179313, at *9 (N.D. Tex. Aug. 14, 2007) (citing Boyd; Allstate Ins. Co. v. Bonner, 51 S.W.3d 289, 291 (Tex. 2001).).

Plaintiff's Prompt Payment of Claims Act cause of action is therefore dismissed.[13]

## IV.    Conclusion

For the reasons stated above, the Court hereby GRANTS Defendant's Cross-Motion for Summary Judgment (D.E. 20) and DENIES Plaintiff's Motion for Partial Summary Judgment (D.E. 19).   The Court enters the following declaratory judgments:

---

[12] This section provides: "If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees." Tex. Ins. Code § 542.060.  This statute was formally codified under 21.55 of the Texas Insurance Code.
[13] In this regard, the Court must also dismiss Plaintiff's claim for breach of contract (D.E. 1 at 4), as Amerisure has not violated any obligations under the Insurance Policies.

(1)  Defendant Amerisure owes no duty to defend Plaintiff Ewing in the Underlying Lawsuit, styled <u>Tuloso-Midway Independent School District v. Liberty Mutual Insurance Company, et al.</u>, Cause No. 10-603421, in County Court at Law No. 1 of Nueces County, Texas, and for the same reasons, owes no duty to indemnify Ewing from any resulting judgment in the Underlying Lawsuit.

(2)  Defendant Amerisure has not breached its insurance contract with Ewing with respect to its denial of a defense for the Underlying Lawsuit.

(3)  Defendant Amerisure is not liable under the Prompt Payment of Claims Act.

SIGNED and ORDERED this 28th day of April, 2011.

Janis Graham Jack
United States District Judge